110 504
111 916

110 504
e118 718
113 868

110 504
f124 98

Case 56—Action to Enjoin the Collection of a Tax—April 16.

# Hardwicke, &c., v. Young.

APPEAL FROM NICHOLAS CIRCUIT COURT.

Judgment for Plaintiffs and Defendants Appeal. Reversed.

Res Adjudicata—Suit to Enjoin Collection of Tax.

Held: A judgment dismissing a suit to restrain the collection of
school taxes for a certain district, upon the ground that plain-
tiff's property was not taxable in that district, is a bar to a
subsequent action by plaintiff to enjoin the collection of the
same taxes on the ground that they were imposed in violation
of the Constitution, as it was the duty of plaintiff to present
in one suit all matters of defense to the taxes sought to be en-
joined.

JOHN T. MORGAN, for appellants.

WINFIELD BUCKLER, for appellee.

(No briefs in the record.)

Opinion of the court by JUDGE DuRELLE—Reversing.

The appellee brought a suit against appellants to re-
strain the collection of school taxes for the district No.
50 of Nicholas county, upon the alleged ground that his
property was not taxable in that district, but in district
No. 28 of Bourbon county. On appeal to this court, it
was decided, in an opinion by Judge Paynter (Trustees
v. Young, 49 S. W., 28), that a judgment in his favor should
be reversed, and his petition dismissed. Appellee there-
upon brought another suit against the trustees to enjoin
the collection of the same taxes, the ground alleged being
that the law under which the taxes were imposed was in
violation of section 157 of the Constitution, for want of
the assent of two-thirds of the voters of the district vot-

ing at an election held for the purpose. The trustees pleaded the former judgment in bar of the action, and a demurrer to the answer was sustained.

Appellee admits that the relief sought in the former suit is identical with that sought in this, but insists that the only fact involved or litigated in the former case was whether appellee's residence was in one district or the other, and that the validity of the tax levy and the constitutionality of the act under which it was made were not directly or indirectly involved in the former suit. His contention is that there are two causes of action, either of which would entitle him to the relief which was sought, —one, that his property was not in the tax district; the other, that the law under which the tax was levied was unconstitutional. If his contention is correct, it is evident that he might litigate in a separate suit every individual ground of objection to the tax. And so we might have a succession of litigations to determine the constitutionality of the act, the situation of the property to be taxed, the validity of the tax levy, exemption from taxation under exceptions in the act, and matters in avoidance, such as payment or compromise.

What is the cause of action in this proceeding? When the collection of a tax is sought to be enjoined, it is manifest that the usual procedure is reversed; the party who, in ordinary proceedings, would be plaintiff, asserting his right, becoming a defendant, and the party who, in ordinary proceedings, would be a defendant, relying upon his defense, becoming the plaintiff. In such a proceeding the matter relied upon in the petition is defensive. In this proceeding it is matter which is supposed to be defensive to a liability to taxation. The matter which is litigated is liability to taxation. The object of the litigation was

not to determine where his property was situated, but to determine the question that it was not liable to the tax. If we go the other way about to ascertain what was the controversy, the case is freed from much of its difficulty. If this had been a tax suit authorized by law for the recovery of the tax, there can be no question that the defendant would be required to set up all available matters of defense, or be barred from asserting them in any future proceeding. There is no question here of matters which may be called *quasi* defensive, such as set-off and counter-claim, upon which the authorities are not altogether in harmony.

In section 349, Freem. Judgm., cited by appellee, it is said: "An adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense." In Cromwell v. Sac Co., 94 U. S., 351 (24 L. Ed., 195), also cited by appellee, Judge Field, discussing the doctrine of *res judicata*, said: "In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a susequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every mat-

ter which was offered and received to sustain or defeat
the claim or demand, but as to any other admissible mat-
ter which might have been offered for that purpose. . . .
The language, therefore, which is so often used, that a
judgment estops, not only as to every ground of recovery
or defense actually presented in the action, but also
as to every ground which might have been presented, is
strictly accurate, when applied to the demand or claim in
controversy. . . ." So, in Bean v. Meguiar (Ky.) 47 S.
W., 771, (20 K. L. R. 885), it was said:   "The opinion upon
the former appeal is decisive of the rights of the parties
to this appeal upon all questions involving the validity of
that judgment, as on a second appeal this court will not
go behind the first decision, and decide a question which
was   or   could   have   been   raised   on   the   first   ap-
peal,   unless   the   question   were   one   that   was   ex-
pressly   left   open   for   future   litigation."      See,   also,
Hackworth v. Thompson, 3 Ky. Law Rep., 254;  Burns v.
Stephenson, 3 Ky. L. R., 754.   In Burnett v. Common-
wealth (Ky.) 52 S. W., 965, (21 Ky. L. R. 695) this court said:
"The rule is well settled that a judgment is conclusive,
not only as to all matters which are in fact litigated, but
also as to all others which the parties might have present-
ed, and should then have presented, and that a litigant
can not present part of his cause of action, and, if beaten
on that, rely on the balance."   So, in Francis v. Wood,
81 Ky., 22, it was said:   "The plea of *res adjudicata* applies,
except in special cases, not only to points upon which the
court was actually required by the parties to form an
opinion and pronounce judgment, but to every point which
properly belonged to the subject of litigation, and which
the parties, exercising reasonable diligence, might have
brought forward.   They can not open the litigation in re-
spect of matters which might have been brought forward

only because, by negligence or inadvertence, they have omitted from their case." And in Davis v. McCorkle, 14 Bush, 746, it was said: "A party can no more split up defenses than indivisible demands, and present them by piecemeal, in successive suits growing out of the same transaction." In Bigelow, Estop. (5th Ed.) p. 86, after stating the general doctrine of *res judicata* with reference to the effect of a former judgment *in personam*, it is said: "It will be seen that the fact that the form of action and precise remedy sought are different in the two suits will not prevent the existence of an estoppel. The estoppel grows out of matter of substance, and form has little, if anything, to do with it. This is believed to be true at the present time, even in regard to matters of pleading, according to more widely prevailing modes. After what has been said, it need hardly be added that, where the court had jurisdiction and the judgment was not 'concocted' in fraud, it is entirely conclusive upon the parties, and can not be impeached in any collateral action, either because, e. g., the law was incorrectly applied to the case, or because some statute under which the proceedings were taken as, e. g., an insolvency statute, was unconstitutional, or because the facts before the court were incorrectly found, or because the facts were not all known at the time." A number of cases are cited in support of this doctrine. In all of them the doctrine laid down in the text is recognized, though in some of them the courts refuse to apply the doctrine, because citizens of one State were held not to have become parties to insolvency proceedings under the laws of another State, in the absence of citation or appearance. In Fogler v Clark, 80 Me., (240, 14 Atl., 9), a creditor, whose debt accrued before the passage of the insolvent law having proved his debt against

the estate and received dividends, sought to recover the
balance of his debt on the ground that the law as to
his claim was unconstitutional. The question was wheth-
er he was estopped by these facts from asserting such
unconstitutionality. It was held that he was estopped.
Said the court: "In Lee v. Tillotson, 24 Wend., 337, it
was held that a party, having waived a constitutional pro-
vision, can not subsequently ask for its protection. 'A
contrary argument,' says Cowan, J., 'would deprive a
criminal of the power to plead guilty, on the ground that
the Constitution has secured him a trial by jury.' In Dan-
iels v. Tierney, 102 U. S., 421, (26 L. Ed., 187), the court
says: 'It is well settled as a general proposition, subject
to exceptions, that when a party has availed himself for
his benefit of an unconstitutional law, he can not in a
subsequent litigation with others not in that position, aver
its unconstitutionality as a defense.' The case at bar is
stronger than that. It is a case of judicial estoppel, or an
estoppel by judicial proceedings. Mr. Cooley, after en-
umerating the classes of cases where, for different causes,
the insolvent law is not allowed to apply, says: 'If, how-
ever, the creditor in any of these cases makes himself a
party to proceedings under the insolvent law, he will be
bound thereby, like any other party to judicial proceed-
ings, and is not to be heard afterwards to object that his
debt was protected by the Constitution from the reach of
the law.' Cooley, Const. Lim. (5th Ed.) 352; Whart.
Confl. Laws, section 528." Again, on page 152, Mr. Bige-
low says: "A judgment is conclusive by way of estoppel
of facts (necessary facts in a chain as well as the primary
facts in issue), and none other, without the existence and
proof or admission of which it could not have been ren-
dered. The judgment determines all questions that ought

to have been presented." After a careful examination of the authorities, we have reached the conclusion that the subject-matter of the litigation was appellee's liability to the tax. He undertook, in a proceeding to restrain its collection, to set up his defense against the claim. It was his duty to assert all matters which were strictly defensive. Having failed to do so, he can not now, in a subsequent suit, be allowed to assert defenses which he neglected or overlooked in the former litigation. He can not cut and come again. There must be somewhere an end to the litigation of liabilities which have been judicially determined. For the reasons given, the judgment is reversed, with directions to dismiss appellee's petition.