## Phillips, et al. v. Big Sandy Company.

(Decided October 1, 1912.)

### Appeal from Pike Circuit Court.

1. Judgment—Res Judicata.—The plea of res judicata applies not only to the point upon which the court was required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties exercising reasonable diligence might' have brought forward at the time. But matters that could not in any state of case have been determined in the first action under the pleadings and evidence, will not be treated as having been determined by the judgment in that action.

2. Judgment—Res Judicata.—The judgment in an action for the construction of a deed will not bar an action by the same plaintiffs against the same defendant seeking to obtain the relief sought in the first action, but upon the ground that the deed after its execution and delivery had been altered so as to deprive the plaintiffs of rights they were entitled to under the deed as it was when delivered.

3.  Deeds—Effect of Alteration of.—The alteration of a deed after its execution and delivery does not affect the rights of the parties as they existed before the alteration.

4.  Deeds—Alteration—Evidence.—When it is sought to show that a recorded instrument in a public office has been altered or mutilated, the evidence of the alteration or mutilation should be clear and convincing, and especially should this be true after a lapse of many years and when the rights of innocent holders have intervened. Every presumption will be indulged in favor of the record.

C. M. WHITT, O'REAR & WILLIAMS and ROBERSON, LANGLEY & COOPER for appellants.

BUTLER & MOORE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In June, 1882, Jessie Phillips deeded to Frank Phillips a tract of land. This deed was put to record in July, 1882, and the recorded paper recites this condition:

"This deed is to Frank Phillips; if he should die without children, this land shall go to his child by the Rowe woman; if land be sold for any debt of Frank Phillips, then the land goes to his children if he has any, and if he has no children then to the said child he has by the Rowe woman."

In 1907 the children of John E. Phillips—he being then deceased—brought a suit in equity against the Big Sandy Company, which company was a remote vendee of Frank Phillips. In this suit they asserted that the deed in question only conveyed to Frank Phillips a life estate in the land described in the deed, and charged that the Big Sandy Company as a remote vendee of Frank Phillips was in the possession of the land, claiming the fee simple title thereof, and they sought to recover the possession of the land upon the ground that Frank Phillips only had and could convey a life estate in the land, and that at his death the remainder in fee descended to them as his children.

To this petition, which only involved the proper construction of the deed, a general demurrer was interposed by the Big Sandy Company, and the lower court being of the opinion that the deed vested the fee in Frank Phillips, dismissed the petition. From the judgment dismissing the petition the children of Frank Phillips prosecuted an appeal to this court, and in an opin-

ion that may be found in 32 Ky. L. R., 76, this court affirmed the judgment of the lower court.

The matter thus rested until 1909, when this action was brought by the children of John E. Phillips against the Big Sandy Company to recover possession of the land upon the ground that the deed from Jessie Phillips to Frank Phillips, after it had been executed and delivered, had been altered in the following material respects: They averred that the condition in the deed as it was written, and when the deed was executed and delivered, read as follows:

"This land is deeded to Frank Phillips; if he should die without children, this land shall go to John E. Phillips; this conveys a life interest to Frank Phillips and cannot be sold by him, and should the land be sold for any debt of Frank Phillips, then the land goes to his children, if he has any or if he has no children then to the said John E. Phillips."

But that the deed had been altered by some person unknown to them at a time they were unable to fix the date of, so that the recorded instrument contained the condition hereinbefore set out.

The Big Sandy Company for the defense to this action, after putting in issue the question of the alteration of the deed, set up and relied on the plea of res judicata as a bar to the action. After the case had been prepared for hearing, it was submitted to the lower court, and a judgment entered dismissing the petition, and from this judgment the children of John E. Phillips prosecute this appeal.

The Big Sandy Company for defense to this action of res judicata present a good defense to the action? The suit brought in 1907 by the children of Frank Phillips against the Big Sandy Company to obtain a construction of the deed was between identically the same parties plaintiff and defendant as the suit charging the alteration of the deed that we are now considering. In the first suit the children of Phillips did not question the correctness of the recorded deed. They rested their cause of action upon the ground that under the condition in the recorded deed, Frank Phillips only took a life estate in the land. In other words, the only question presented in the first suit and the only question that could have been or was decided in that suit, was whether or not under the condition in the deed Frank Phillips took

a life estate or the fee. In the suit now before us, the construction of the deed is not in issue. The only question presented by the pleadings is—was the deed made by Jessie Phillips to Frank Phillips altered after its execution and delivery? It is very true that the parties plaintiff and defendant were identical in each suit and that the relief sought in each suit was the same. The only difference between the two actions being that in one the children of Phillips sought to recover the land upon the ground that the deed when properly construed vested them with an estate in remainder, while in the other they sought to recover the land upon the ground that the deed had been altered. It will be at once observed that there is no similarity in form or substance between the issues presented in these two actions. They are as different as grounds of complaint could well be. The alteration of the deed which is the subject of the second action did not have any connection with or relation to the subject matter of the first action. But notwithstanding this, it is insisted by counsel for appellee that the judgment in the first action, which has never been modified or vacated, presents a complete bar to the successful prosecution of the second suit. In support of this position we are referred by counsel to a number of cases decided by this court, in which the principle upon which the doctrine of res judicata rests has been announced. The leading case by this court upon this subject is Davis v. McCorkle, 14 Bush, 746, in which it is said:

"Where a given matter becomes the subject of litigation in an adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as part of the subject in contest, but which was not brought forward only because they have from negligence, inadvertence or even accident omitted a part of their case. The plea of res judicata applies not only to the point upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation and which the parties exercising reasonable diligence might have brought forward at the

time." To the same effect is Frances v. Wood, 81 Ky., 16.

These cases go to the extent of expressly holding that the plea of res judicata applies not only to the point upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation and which the parties exercising reasonable diligence might have brought forward at the time. But, we do not understand these opinions to mean that a judgment in an action between the same parties on a given state of facts will be a bar to another action between the same parties upon an entirely different state of facts and facts that were not in any manner presented by the pleadings or evidence in the first suit, and that were not and could not have been in any state of case considered by the court in determining the rights of the parties in the first suit. The statement in the Davis case, that parties must bring forward their whole case and will not generally be permitted to relitigate matters which might have been brought forward but were not from negligence or inadvertence, refers only to such matters as might have been considered and adjudicated in disposing of the issues raised in the first action. It does not mean that matters that could not in any state of case have been determined in the first action will nevertheless be treated as having been determined by the judgment in that action. Courts of last resort are quite uniform in their rulings upon the subject of res judicata, and the view we have expressed is not only in harmony with the prevailing doctrine on the subject, but in accord with the opinions of this court as properly interpreted. As illustrating the manner in which the subject has been treated we may notice Russell v. Place, 94 U. S., 606, 24 L. ed., 214, in which the United States Supreme Court said:

"It is undoubtedly the settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties. * * *. To render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necesarily tried or determined; that is, that the verdict in the suit could not have been rendered without deciding that matter; or, it must be shown by extrinsic evidence consistent with the rec-

ord that the verdict and judgment necessarily involved the consideration and determination of the matter.''

And City of New Orleans v. Citizens Bank, 167 U. S., 371, 42 L. ed., 202, where the rule was thus stated:

''But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases therefore where it is sought to apply the estoppel of a judgment rendered upon one cause of action to the matters arising in a suit upon a different cause of action, the inquiry must always be as to the points or questions actually litigated and determined in the original action—not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.'' To the same effect is Mobile County v. Kimball, 102 U. S., 691, 26 L. ed., 238; Reynolds v. Stockton, 140 U. S., 254, 35 L. ed., 464; Doe v. Carpenter, 18 Howard (U. S.) 297, 15 L. ed., 389.

In the light of these authorities, we think it clear that the judgment in the first action was not a bar to the maintenance of the second. Indeed, in the absence of authority upon this subject, the question upon principle seems free from doubt.

Passing this we may assume that the law is well settled that the fraudulent or unlawful alteration of a deed after its execution and delivery does not affect the rights of the parties as they existed before the alteration—See note to Burgess v. Blake, 128 Ala., 105, 86 Am. St. Rep., 82—and so the remaining question is—is the evidence sufficient to show that the deed was altered in the manner claimed by the children of Frank Phillips? The original deed is not in the record, and it appears that it has been lost or destroyed. Nor is there the testimony of any person who ever saw this deed in its original form. Aside from some mutilations and alterations that appear in the record book in which the deed is recorded, and that will be hereafter noticed, there is no evidence of its mutilation or alteration, except the statements of some four or five persons who say that they heard Jessie Phillips say that he intended that Frank Phillips should only have a life estate. The county clerk of Pike County, in whose office the recorded deed was

lodged, when asked in respect to erasures and mutilations on the deed book, said:

"Beginning on page 46 of said deed book, near the last part of line 11, and including line 12, reads as follows: 'his child that he had by the Rowe woman,' that is the first erasure of said deed. And in line 15 on page 46 of said deed, near the middle of said line, it seems there has been an erasure, and it reads: 'child he has by the Rowe woman;' that is all of the erasures. Q. The erasures you speak of in said deed, state whether or not the writing you have just read is the same as the writing of the other parts of the deed? A. It doesn't look to me to be the same writing; I cannot tell; I am not well enough up on that to answer that question to tell whether it is or not. Q. State whether or not all the erased parts of said deed is filled in by other writing? A. There seems to be an erasure in last part of line 12 on page 46 which has not been filled in. Q. State whether or not the parts of said deed that you have just read as being erased is written over the erasures? A. Yes sir. Q. You mean that after that part of the deed was erased, that the part you have just read as being an erasure was written over the erased part? A. Yes, it was written over the part that resembles the erasure. Q. You don't know when these erasures were made, do you? A. No sir, I do not. Q. Is it not a fact that in your experience as clerk that mistakes are sometimes made when recording deeds, which are erased and the corrections made? A. Yes sir, I have made a few mistakes like that and erased them; but that doesn't occur often with me."

There is also filed a photographic copy of the deed as it appears on the record, and this copy shows the erasures and the words rewritten as testified to by the clerk. How, or, when, or by whom these erasures were made on the record does not appear. Possibly the person who recorded the deed may have recorded it incorrectly, and upon discovering the error, have made the erasures and changes in the language of the deed. Possibly these erasures and changes may have been made by a stranger; and, it is possible they may have been made by Jessie or Frank Phillips. This, however, is all mere speculation. But we are asked to say that the evidence of these erasures and changes is sufficient to warrant us in saying that the deed as originally executed

and delivered contained the condition contended for by the heirs of Frank Phillips, and not the condition that appears on the record book. But it is more reasonable to assume that the changes and alterations were made in the original deed before its delivery and that the recording officer first recorded it incorrectly and afterwards upon discovering his error corrected it, than it is to assume that the erasures and alterations were wrongfully and fraudulently made on the record after the deed had been recorded. The only fact established by the evidence is that an alteration was made after the deed had been recorded, but this isolated fact alone is not sufficient to sustain the charge that the deed as it now appears on the record is not a correct copy of the deed as it was originally written. We do not attach importance to the statements made by Jessie Phillips that he only intended Frank Phillips to have a life estate. In making these statements he might have believed that the recorded deed, worded as it now appears, only conveyed to Frank Phillips a life estate. This was the construction contended for by the children of Frank Phillips in the first suit; and, as the question was not entirely free from doubt, it is probable that Jessie Phillips believed that in writing the deed as it now appears of record he only conveyed to Frank Phillips a life estate, and so stated. When it is sought to show that a recorded instrument in a public office has been altered or mutilated, the evidence of the alteration or mutilation should be clear and convincing; and, especially, should this be true after the lapse of many years and when the rights of innocent holders have intervened. The vendees of Frank Phillips and all persons looking to him for title had the right to assume that the recorded instrument was a truthful muniment of title, and the right to depend on the absolute verity of the record. Every presumption should be indulged in favor of the record. As the evidence is not sufficient to show the unauthorized alteration of the record, the judgment dismissing the petition is affirmed.