## Aylor v. Aylor.

(Decided May 6, 1914.)

## Appeal from Boone Circuit Court.

1. Advancements—Declarations by Father—Competency.—In determining whether money or property furnished to a son by his father is a gift or an advancement, declarations made by the father prior to the transfer or contemporaneous with it, are competent to show whether it was intended as a gift or an advancement; but subsequent declarations are inadmissible, unless they constitute a part of the res gestae, or are against the interest of the donor.

2. Decedents' Estates—Action to Settle—Pleading.—In a suit to settle a decedent's estate, it is within the sound discretion of the chancellor to permit amended and supplemental pleadings in the furtherance of justice, although the pleading may seek relief which is additional to, but only carries out the judgment rendered upon the original petition.

3. Decedents' Estates—Action to Settle—Parties.—In a suit to settle a decedent's estate, the mortgagees of the interests of some of the heirs are proper parties to the action.

4. Res Judicata—Application of Plea.—A plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward.

5. Advancements—Judgment Fixing Not Bar to Further Proceeding To Set Aside Conveyance.—A judgment fixing the advancement to be charged against an heir is not a bar to a further proceeding to set aside a conveyance to the debtor from the other heirs, and to subject the land theretofore conveyed to the satisfaction of the judgment for advancements.

CASTLEMAN & MURPHY for appellants.

S. W. TOLIN and S. GAINES for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Jemison Aylor, of Boone county, died intestate on February 10, 1908, leaving a widow, Sarah J. Aylor, and six sons and two daughters surviving him. His estate consisted of 254 acres of land, and about $2,000.00 in personalty. His widow, Sarah J. Aylor, also owned 23 acres of land, in fee.

Shortly after Jemison Aylor's death his widow and children held a conference for the purpose of dividing the

estate without proceedings in court; and to that end the children, except a daughter, Clara Craven, signed acknowledgment showing the amount of advancements made to them respectively by their father. These acknowledgments showed advancements as follows: To John T. Aylor, $500.00; to E. J. Aylor, $510.35; to Huey Aylor, $150.00; to Alice Rouse, $200.00; to Harvey Aylor, $300.00; to B. E. Aylor, $463.00; and to Perry L. Aylor, $350.00. The daughter, Clara Craven, had received no advancement, and, of course, made no acknowledgment.

For the purpose of equalizing the advancements, John T. Aylor executed his note to his sister Clara for $147.09; E. J. Aylor executed one note to his sister Alice for $109.15, and another to his brother Huey for $92.03; B. E. Aylor executed one note for $9.16 to Harvey, a second for $77.84 to Clara, and a third for $67.15 to Huey; while Perry L. Aylor executed his note for $40.84 to his sister Clara. These agreements and notes, in so far as they were executed by the appellants John T. Aylor and Perry L. Aylor, respectively, read as follows:

"Mch. 7, 1908. I hereby make my statement for advancement to the Jemison Aylor estate for the sum of Five Hundred Dollars ($500.00).

"John T. Aylor."

"March 7, 1908. At the settlement of the estate of Jemison Aylor I promise to pay to the order of Clara D. Aylor One Hundred and Forty-seven 9-100 dollars ($147.09).

"John T. Aylor."

"Mar. 7, 1908. I hereby make my statement for advancement to the Jemison Aylor estate for the sum of Three Hundred and Fifty dollars ($350.00).

"P. L. Aylor."

"Mch. 7, 1908. $40.84.

"At the settlement of the estate Jemison Aylor, for value received, I promise to pay to the order of Clara D. Craven Forty 84-100 dollars.

"P. L. Aylor."

At the same time the heirs agreed to divide the land equally between them, the widow releasing her dower and agreeing that her 23 acres might, for the purposes of division, be treated as a part of Jemison Aylor's estate, in consideration of the heirs agreeing to pay her a stipulated annuity during her widowhood. To carry out this agreement three commissioners were agreed upon, who divided the land, including the 23 acres, between the

eight children. Deeds were made on May 16, 1908, carrying this division into effect. It was understood that these agreements fixing the advancements, the execution of the notes to equalize the heirs out of the personalty, and the equal division of the realty, would divide the entire estate of Jemison Aylor and his widow among the eight children, without any court proceedings, all the parties being of age.

About a year thereafter, however, John T. Aylor and Perry L. Aylor repudiated their notes, by which John T. had agreed to pay his sister Clara $147.09, and Perry L. to pay her $40.84. Consequently, on March 9, 1910, E. J. Aylor and Huey Aylor, as administrators of their father's estate, joining with them the widow and the other children, sued John T. Aylor and Perry L. Aylor, setting up the foregoing acts of division, and their repudiation of their notes, and asked that the estate of their father be settled, and that the several heirs be charged with whatever advancements they had received from their father. The petition charged that John T. had used a tract of 11 acres of land, with the house thereon, which belonged to his father, for a period of 21 years, for which he had paid no rent; that Perry L. had in like manner occupied the "Hicks Farm," of about 7 acres, with the house thereon, for about 10 years; that the rental value of each of said tracts was $100.00 a year; and it asked that they be charged rent at that rate.

The petition also set up the advancements made to the other heirs, as shown by the agreements above referred to. The answers traversed the petition; and the action having been referred to the commissioner to take proof and settle the question of advancements, the commissioner filed his report on August 8, 1910, charging John T. Aylor with 20 years' rent at $85.00 a year, aggregating $1,700.00, less credits for taxes, insurance and improvements, amounting to $296.69, leaving a net charge against John T. Aylor of $1,403.31. The report charged Perry L. Aylor with rent for 8 years, at $75.00 per year, aggregating $600.00. The supplemental report charged the other heirs with the amounts which they had acknowledged, as above shown.

John T. Aylor and Perry L. Aylor filed exceptions to the commissioner's report charging them with advancements as above stated; but their exceptions were overruled and the report was confirmed on August 12, 1910, thus fixing the indebtedness of John T. Aylor to

the estate for advancements at $1,403.31, and Perry L. Aylor's indebtedness, on the same account, at $600.00.

It having been ascertained upon the Master's final report of distribution that each child was entitled to $542.83 of the personalty, that sum was credited upon the indebtedness of John T. Aylor and Perry L. Aylor, respectively, leaving the former's indebtedness at $860.48, and the latter's at $57.17. No exceptions having been filed to the report of final distribution, it was confirmed on August 16, 1911.

To recover these two sums, the administrators, the widow, and the other heirs, on the same day, tendered their amended petition, which was subsequently filed, reciting the facts as above related, and asked that the conveyance of May 16, 1908, to John T. and Perry L. Aylor, by which they received their portions of the lands of their father and mother, be canceled, and so much of the land, as might be necessary in each case, be sold to pay the debts of $860.48 and $57.17, respectively, theretofore established by the commissioner's report.

The amended petition also alleged that John T. and Perry L. Aylor had fraudulently signed the statements and notes covering the advancements for the purpose of misleading the other heirs, and thereby secure an equal division of the land, and that the other heirs had relied and acted upon the signed statements and notes of John T. and Perry L. Aylor, in good faith, in agreeing to the equal division of the land.

The petition further recited that John T. Aylor had, in the meantime, mortgaged his property to the Peoples Deposit Bank of Burlington, and that Perry L. Aylor had likewise mortgaged his land to the Covington Savings Bank & Trust Company. These two corporations were joined as defendants and called upon to set up their respective interests, which they did by proper pleadings.

The final judgment shows, however, that one of these mortgages had been satisfied, and that the other did not include any of the land in controversy. So that neither of said mortgagees were interested in either tract of land at the time the final judgment was entered.

By their joint answer to the amended and supplemental petition, as amended, John T. and Perry L. Aylor denied they had ever agreed to pay any advancements from their father, and repudiated their written agreements to that effect. They admit the question of advancements was discussed at the conference of the heirs when

the equal division of the land was agreed upon, but that it was agreed the personal estate in the hands of the administrators should alone be looked to for the satisfaction of any and all advancements claimed by, or charged against any heir. They further say, that if they did make any agreement concerning advancements, or committed a fraud in doing so, the other heirs cannot complain of the defendants' repudiation thereof, because they failed to set up the repudiation and the fraud in the original petition for a settlement, and that those questions were *res judicata*. The reply made an issue upon those questions.

The circuit court sustained the charge of fraud, and granted the prayer of the petition, by adjudging a lien upon, and ordering a sale of the respective tracts of land to pay the debts as above indicated; and from that judgment John T. Aylor and Perry L. Aylor appeal.

As grounds for a reversal they insist: (1), that there was no competent evidence to sustain the commissioner's report charging them with rents; (2), that the amended and supplemental petition should not have been filed over their objection, since this action had proceeded to judgment, and any proceeding for the purpose of subjecting the land, as was sought by the supplemental and amended petition, could have been brought only in a separate and independent suit; (3), that the Covington Savings Bank & Trust Company and the Peoples' Deposit Bank of Burlington were improperly joined as defendants to the amended and supplemental petition; and (4), that the judgment rendered pursuant to the original petition, whereby the indebtedness of John T. Aylor and Perry L. Aylor to the estate was fixed, was *res judicata* and disposed of all the questions between the parties, including the liability of the land for the debt, which question should have been asserted in the original petition.

1. The first objection is well taken, since there is no evidence in this record which even tends to show that Jemison Aylor ever charged either of the appellants with rents, or that he ever intended to do so. On the contrary, he and his wife executed and delivered to the appellant John T. Aylor a paper which reads as follows:

"I, Jemison Aylor, of near Hebron, Boone county, Kentucky, have permitted my son, J. T. Aylor, to occupy and improve the tract of land on which he now lives, near Hebron, Boone county, Ky., called the Hicks place, containing ten acres, and I have always intended to convey said land by deed to my said son, J. T. Aylor, but have

not done so. Now should I die without making my said son such deed, I want him to have this particular tract and parcel of land in the division and settlement of my estate.                                  Jemison Aylor.
                                      Sarah T. Aylor.''

The judgment of the circuit court was based alone upon the evidence of several witnesses who testified that Jemison Aylor had said to them that the appellants were not paying him any rent; but all of these statements were made after appellants had taken possession of their respective tracts of land.

In Bailey's Admr. v. Barclay, 109 Ky., 639, Sam and Dock Bailey, sons of the decedent, were each charged $300.00 as an advancement made them by their father, upon the testimony of several witnesses, who testified to conversations had with their father during his lifetime, in which he told them he had given each of his married children $300.00, and had set them up housekeeping; and as Sam and Dock were married, these statements were taken as a basis for fixing the advancements against them. There was no other proof to sustain these advancements against Sam and Dock Bailey.

In disapproving the charge as an advancement, the court said:

"In passing upon the competency of declarations made by an ancestor as to the intention with which the gift was made, it was generally held that declarations of the donor prior to the transfer or contemporaneous with it, were competent, but that subsequent declarations are inadmissible, unless a part of the *res gestae,* or against the interest of the donor. See 1 Am. & Eng. Ency. L. (2 ed.), page 776; Gillett, Ind. & Col. Ev., sec. 155. Under this rule we are of opinion that evidence of declarations by intestate is not sufficient to charge appellants, Sam and Dock Bailey, with advancements.''

Hill's Gdn. v. Hill, 122 Ky., 681, is to the same effect.

Under this rule the evidence in this record does not sustain the charge of advancements fixed by the commissioner against the appellants.

While the repudiation by the appellants of their agreements fixing the advancements to John T. Aylor at $500.00, and to Perry L. Aylor at $350.00, made this settlement suit necessary, there was no good reason for charging them for advancements different from the sums originally agreed upon by all the heirs. That agreement was binding upon all the parties, and the refusal of the

appellants to carry it out did not, in any way, invalidate it. Under the proof the commissioner should have reported the net advancements against John T. Aylor at $500.00, and against Perry L. Aylor at $350.00, and with these sums they should have been charged in the distribution; and in the event there should have been insufficient personalty going to appellants to discharge these obligations, the interest of appellants in the land should have been subjected to the payment of their respective debts.

2. To sustain the second objection, appellants rely upon Brown v. Van Cleave, 86 Ky., 388; Johnson v. Johnson, 88 Ky., 275, and Meadows v. Goff, 90 Ky., 540. We do not agree, however, that the rule announced in these cases is conclusive of appellants' contention in this settlement suit, where the supplemental proceedings were necessary to effectuate the purpose of the original petition—the division of the entire estate between the heirs. It is not an ordinary suit where a money judgment is the only relief originally sought; but it is an action in equity for the final adjustment of the rights of all the heirs. In such an action the chancellor has a broad discretion in permitting amended and supplemental pleadings in the furtherance of justice.

Excepting the bank and trust company, the parties to the amended pleadings were precisely the same as the parties to the original petition; and as the amended and supplemental petition was solely for the purpose of satisfying the original judgment between the same parties, we fail to see that appellants have been in any way prejudiced. No good reason existed, under the circumstances, for requiring the administrators to bring a new suit. The later proceedings being essential to the relief asked in the original petition for a settlement of the estate, they were not improperly taken in the same action.

3. The bank and trust company being mortgagees of the land which John T. and Perry L. Aylor had received from their father's estate, they were necessary parties to the supplemental proceeding which sought to subject those lands to the payment of the debts due the estate. The statute requires that all lien-holders shall be made parties in actions of this character. Certainly, the appellants were not prejudiced, since the supplemental petition making their mortgagees defendants followed precisely the same course that would have been taken if a new suit had been brought by the administra-

tors. Section 134 of the Civil Code of Practice gives the trial judge a broad discretion in the matter of allowing or rejecting pleadings, and its ruling will not be disturbed when the ends of justice have been promoted, and the parties have had a fair trial. Taylor v. Moran, 4 Met., 127; Barron v. City of Lexington, 32 Ky. L. Rep., 92, 105 S. W., 395; Staton v. Byron, 32 Ky. L. Rep., 246, 105 S. W., 928; Vaught v. Hogue, 32 Ky. L. R., 1061, 107 S. W., 757. There was no error here.

4. We see no merit in the plea of *res judicata.* This defense is based upon the well known rule that a plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward. Francis v. Wood, 81 Ky., 16. The rule, however, does not apply here.

The question presented by the amended petition was not required to be presented, and was not concluded by the original proceedings. The fallacy of appellants' contention in this respect is well shown by the decision in Honaker v. Cecil, 84 Ky., 206, relied upon by appellants in support of their view.

In that case appellants had mortgaged their land and the mortgage lien had to be enforced by a sale of the land. Both the husband and wife were before the court, although neither had answered. Afterwards the husband and wife brought a separate action to recover homestead in the land, on the ground of the wife's insufficient acknowledgment of the mortgage. In the last suit the court dismissed their petition, upon the ground that they had had their day in court in the first suit, where the question of homestead was necessarily disposed of by the judgment which sold their entire interest in the land for the payment of the mortgage. Honaker v. Cecil was properly decided, and has no application to the case at bar, since the claim of homestead was directly antagonistic to the plaintiff's claim as mortgagee; and after the plaintiff had obtained a judgment sustaining and enforcing his mortgage, clearly there could be no homestead in the land thus subjected.

Likewise, in Moran v. Vicroy, 117 Ky., 195, relied upon by appellants, a judgment for plaintiff in a suit for trespass to land, precluded defendant from relitigating

the question of the title to the same land in an injunction suit to restrain further trespasses. The question settled in the suit for trespass was the title to the land, and it necessarily remained settled in future suits. The essence of the rule here relied upon by appellants is, that where a judgment settles a question in issue, that question cannot be again tried. It is peculiarly applicable to defenses and requires a defendant to present all of his defenses before judgment, under penalty of being barred from presenting any new defenses in another action after judgment has once gone against him.

The rule has no application here.

For the error above indicated, however, the judgment is reversed for further proceedings consistent with this opinion.