## Combs et al. v. Prestonsburg Water Co.

(Decided June 18, 1935.)

170

HILL & HOBSON and COMBS & COMBS for appellants.

A. J. MAY, W. F. GRIGSBY and S. S. WILLIS for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

B. F. Combs and Edward P. Hill instituted this action for and on behalf of themselves and all other citizens and taxpayers of Prestonsburg, Ky., and for and on behalf of the city, against the Prestonsburg Water Company, a corporation, seeking (1) to have the franchise under which the water company was operating a water system in the city adjudged to be void and to oust it from the occupation of the streets and thoroughfares of the city with its mains and lines; (2) to recover damages for the wrongful occupation of the streets; (3) to recover back sums paid by the city to the water company as rentals for hydrants and fireplugs; (4) to recover excessive water rents collected by the water company from its consumers, and (5) that, if it should be held that the water company had a valid franchise, then to enjoin its enforcement of its rules and regulations on the ground that they are unreasonable.

In addition to a general denial, the water company challenged the right of plaintiffs to maintain the action and also interposed a plea of res judicata. Thereafter the water company instituted an action against the city seekng to recover hydrant or fireplug rentals due under the provisions of its charter, and the two actions were consolidated.

On final hearing the chancellor dismissed the taxpayer's petition in the first action, and in the second adjudged that the water company recover of the city the amount alleged to be due. The plaintiffs in the taxpayer's suit and the city are appealing.

In 1921 the city council of Prestonsburg authorized the sale of a franchise for the installation and operation of a water system for the purpose of supplying water

to the city and its citizens, and G. C. Davis purchased, and was granted the franchise, and a certified copy thereof as spread on the records of the city was delivered to him. Pursuant thereto he installed a system of waterworks which he operated until his death. Thereafter it was operated by his widow and son, who were his only heirs at law, until 1929, when it was sold by them to the Prestonsburg Water Company. The sale was evidenced by a written assignment of the copy of the franchise delivered to Mr. Davis. Appellants alleged and now assert that the franchise under which appellee claims to be operating and which the records of the city show was sold to Davis and a copy of which was delivered to him was not the franchise which the council directed to be sold, and that it was not adopted and sold in conformity with the requirements of the law. The franchise which it is alleged was actually ordered to be sold and the one which was granted and under which appellee is operating are set forth at length in the petition. It is pointed out that these are materially different with reference to the time within which the work of installation was to be begun and with respect to the rates to be charged the city and the citizens for water consumed; that the first provided that the purchaser should place in the thoroughfares of the city all stopcocks, hydrants, and fireplugs at such points as might later be determined and agreed upon by the council, and as a consideration of the granting of the franchise the purchaser should furnish the city unlimited use of the water in case of fire, but that the city's use of water for other purposes should be at the same rate as water furnished individuals; that rates for the use of water where no meter was installed should be a flat rate of not less than $1 per month, and, where meters were installed, a rate of 50 cents per thousand gallons, with the right to make reductions or special rates to those who used large quantities of water; that under the franchise purported to be granted it was provided that the city should pay for each fireplug installed the sum of $20 per annum, to be paid quarterly; that a minimum of $2 per month be charged the users of water whether the meters were installed or not, and, where meters were installed, the rate should be 75 cents per thousand gallons if more than 2,000 gallons were used in any month, with the right to make special rates where unusual quantities were used. It was alleged that these

provisions in the franchise purported to be granted were inserted by fraud of G. C. Davis or mistake of G. C. Davis and the city council. Much of the evidence for appellants relates to the records and proceedings of the city council in an effort to show that the franchise under which appellee is claiming to operate was not the one sold and granted by the city, but on the whole, and in view of the evidence concerning the state of the records, a number of pages being missing from the minute book, a finding that the franchise as claimed by appellee is valid might be sustained; however, as will presently appear, it is unnecessary to determine that question.

On March 12, 1930, appellee instituted an action under the Declaratory Judgment Act (Civ. Code Prac. sec. 639a-1 et seq.) against the city of Prestonsburg and O. H. Stumbo, a citizen thereof and a patron consuming water furnished by plaintiff, and alleged that on June 20, 1921, the city council in pursuance and in conformity with the provisions of the statute, directed the sale of the franchise for the upkeep, maintenance, and operation of a water system in the city of Prestonsburg, that such franchise was duly advertised as required by law, and that at a sale thereof G. C. Davis became purchaser, and thereafter plaintiffs became and were the owners and holders of the franchise and the rights and privileges therein set out. A copy of the franchise was filed with, and made a part of, the petition. The petition sets out section 8 of the franchise which the record shows was sold to Davis, and alleged that defendant O. H. Stumbo and a large number of persons who were patrons and using and consuming water furnished by plaintiff had raised an actual controversy with plaintiff respecting the construction of the franchise and particularly clause 8 thereof; that plaintiff claimed the right to charge each consumer a minimum of $2 per month whether meters were installed or not, regardless of the amount of water consumed up to 2,000 gallons and 75 cents per thousand gallons consumed in excess of 2,000 gallons; that the defendant Stumbo had paid the rate charged by plaintiff but same was paid under protest; and that same was true as to a large number of others. In a second paragraph it was alleged that there was a controversy between it and the city as to whether the fireplugs furnished by it

complied with the terms of the franchise. In a third paragraph it alleged that it had adopted rules and regulations covering and defining the rights of plaintiff and those consuming water furnished by it, and that a controversy had arisen concerning the reasonableness of these rules. It called upon the city and the defendant Stumbo to make defenses for and on behalf of themselves and all patrons of plaintiff, and asked for a construction of the franchise and a declaration of the rights of the parties. A copy of the rules and regulations promulgated by plaintiff was filed with, and make a part of, the petition.

Defendants interposed a demurrer to the petition and to each paragraph thereof. In an affidavit filed in the proceeding, E. S. Mayes, president of the Prestonsburg Water Company, stated that the franchise under which the company was operating was granted on June 20, 1921, and that plaintiff acquired same about the month of July, 1929. The affidavit set forth at length improvements made in the system after it was purchased from Davis at a cost in excess of $35,000 and facts with respect to the controversy, and filed in the affidavit a letter from B. F. Combs, city attorney, claiming that plaintiff had not installed standard fireplugs as required by the franchise.

By answer defendants denied that the water system was not completed or perfected until plaintiff became the owner thereof, and averred that Davis installed a waterworks plant in Prestonsburg "pursuant to said franchise," but that plaintiff had improved same; that the petition correctly set out section 8 of the franchise referring to fixing rates to consumers of water, and admitted that there was a controversy with respect to same as set out in the petition, defendants claiming that under that section the rate for all water consumers should be 75 cents on each thousand gallons, but that each consumer was required to pay the sum of $2 per month, whether he used sufficient water at that rate to amount to $2. It was also admitted that there was a controversy concerning the fireplugs and the rules and regulations as set forth in the petition.

The cause was submitted by an agreement of parties upon the pleadings and exhibits, and it was adjudged that the water company had a right to charge a

minimum rate of $2 per month for water consumed up to 2,000 gallons, and, if more than 2,000 gallons were used in any month, the rate should be 75 cents per thousand gallons, regardless of the amount, that the section respecting fireplugs was not ambiguous nor susceptible of two constructions, and that it only meant that plaintiff was only to provide and use machinery and equipment to provide water pressure sufficient to force a stream of water through an ordinary 2-inch fire hose 45 feet vertically.

The court declined to pass on the size of the fireplugs required. With respect to the rules and regulations adopted by plaintiff, it was adjudged that it had a right to adopt and enforce reasonable rules and regulations for the conduct of its business. The chancellor declined, however, to adjudge whether the rules and regulations adopted by the company were reasonable or unreasonable, but did hold that the company's rule as to a minimum rate was in contravention of section 8 of the franchise as defined and construed by the court. Both plaintiff and defendants objected and excepted to the court's finding and prayed an appeal.

It appears in evidence that plantiff attempted to prosecute an appeal, but it was not perfected within the time required by law. This judgment and proceeding is the basis of appellee's plea of res judicata.

It is contended by counsel for appellants that the legality of the franchise which was sold and delivered to appellee is not res judicata, and that only section 8 of the franchise fixing the rate was involved in the former litigation, but it will be noted in the petition in that action that appellee alleged that the franchise under which it was operating was granted on June 20, 1921, and it sets forth that the necessary steps were taken by the city council to give it validity, and then alleges that a controversy existed between it and the city and citizens with respect to section 8 and other sections of the franchise. It is true that the city and citizens did not urge as a defense the specific matters now relied on, but they had adequate opportunity to say and to prove all that they now can in relation to that question.

In Locke v. Commonwealth, 113 Ky. 864, 69 S. W. 763, 764, 24 Ky. Law Rep. 654, it is said:

"The doctrine of estoppel by former judgment rests upon the maxim that there must be an end to litigation. The object in having courts of justice is that litigated questions shall be decided, and that, when once decided, they shall not be again brought under discussion. The judgment is a bar because the peace and prosperity of society and public policy forbid the relitigation of matters once decided. 1 Freem. Judgm. sec. 247; Hardwicke v. Young [110 Ky. 504] 62 S. W. 10 [22 Ky. Law Rep. 1906].

"2. The rule is elementary that, when a matter is in litigation, parties are required to bring forward their whole case; and 'the plea of res judicata applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' Davis v. McCorkle, 77 Ky. [14 Bush] 746; Williams v. Rogers, 77 Ky. [14 Bush] 776; Hardwicke v. Young [110 Ky. 504] 62 S. W. 10 [22 Ky. Law Rep. 1906]."

The validity of the franchise was actually in issue whether technically so or not, and is conclusive upon the parties and their privies, not only upon the particular subject-matter, but as to all future litigation between the same parties or their privies touching the same subject-matter. The doctrine not only embraces matters technically involved, but it extends further and compels the parties to bring forward and present to the court every fact then existing in support of the claim or defense. Hopkins v. Jones, 193 Ky. 281, 235 S. W. 754; Turner v. Deaton, 220 Ky. 154, 294 S. W. 1063; Perry Mercantile Co. v. Miller, 233 Ky. 148, 25 S. W. (2d) 35; Aylor v. Aylor, 158 Ky. 713, 166 S. W. 216; Elswick v. Matney, 132 Ky. 294, 116 S. W. 718, 136 Am. St. Rep. 180; Phillips v. Big Sandy Co., 149 Ky. 555, 149 S. W. 957; National Bank v. Bryant, 76 Ky. (13 Bush) 419; Davis v. McCorkle, 77 Ky. (14 Bush) 746; Snapp v. Snapp, 87 Ky. 554, 9 S. W. 705, 10 Ky. Law Rep. 598; Honaker v. Cecil, 84 Ky. 202, 1 S. W. 392, 8 Ky. Law Rep. 188.

One of the citizens who insituted this action and is also an attorney participating in its prosecution represented the city in the former litigation. The records of the city council were then accessible, and both the representative of the city and the taxpayer who was a party to the action knew, or by the exercise of any diligence could have known, every fact now urged to show the invalidity of the franchise. Their claim, if meritorious, should have been interposed as a defense, and the rule that forbids parties from asserting rights or defenses by sporadic piecemeal precludes them from asserting again anything incident to, and necessarily connected with, the subject-matter of the former litigation which might have properly been interposed as a defense therein. It is not, and could not in the circumstances, be claimed that the former judgment is tainted with any fraud or collusion, and we are constrained to hold that, in so far as the validity of the franchise is concerned, the doctrine of res judicata applies.

What we have said concerning the validity of the franchise applies with equal force to the court's construction of section 10 of the franchise, which provides in substance for the use of modern and improved machinery and equipment in the installation, maintenance, and operating of the system; and that the water used from the fireplugs in case of fire shall be of at least sufficient pressure to force a stream of water through ordinary 2-inch fire hose 45 feet vertically. It is contended, however, by counsel for appellant that the standard fire hose in that section of the country is $2\frac{1}{2}$ inches, and that the fireplugs should not be less than that size, whereas the fireplugs installed and maintained by appellee are only 2 inches. Wholly apart from any question of former adjudication, it may be said that the fireplugs have been equipped with attachments which permit the use of $2\frac{1}{2}$-inch hose, and it appears from the evidence that with these attachments the pressure is sufficient to force a stream of water through $2\frac{1}{2}$-inch hose vertically to a height greater than the minimum provided in the franchise. Even witnesses for appellant admit that the service had proven effective and efficient in every fire that had occurred. It is also indicated by a great weight of evidence that the machinery and equipment is modern and filters and distributes an ample supply of wholesome water. It is

therefore manifest that appellants have failed to meet the burden of showing that the equipment does not comply with the requirements of the franchise.

Concerning the rules and regulations of appellee for the conduct of its business, it may be said at the outset that public service corporations have a right to make and enforce reasonable rules and regulations for the conduct of their business. See Tackett v. Prestonsburg Water Company, 238 Ky. 613, 38 S. W. (2d) 687, and cases therein cited. This much is admitted by appellant; however, they are insisting that appellee's rules are unreasonable, arbitrary, and oppressive. It is complained that the company keeps the caps over the tile or cylinder inclosing the meters, cut-offs, and stop-cocks locked, and thus denies customers access thereto and prevents them from reading their meters. There is evidence that this is necessary to protect the meters from vandalism and from debris, in the event the top should be removed and also to avoid injuring persons who might step into the opening in such event. There is also evidence that this is done by other water companies. However, it is insisted that the customers should be furnished keys to these caps so that they might have access to the meter and cut-off. While the company should at the reasonable request of customers permit them to read the meters, and would upon proper showing be compelled to do so, we know of no authority, and none has been pointed out, indicating that public service corporations should furnish keys to its own property to customers. Appellee's officers testified that they are ready and willing to permit customers to inspect meters upon proper requests. Criticism is also made of a rule requiring a small deposit upon which it agrees to pay interest while retained. It appears in evidence, and is a matter of common knowledge, that public service corporations generally require a similar deposit or guarantee of payment of bills.

The most vigorous attack is made upon the rule requiring the payment of $1 when the water is cut off or turned on because of nonpayment of bills or at the request of the consumer, but it appears that charges are made for similar services even where plants are municipally owned, and witnesses introduced by appellants testified that the consumer may install their own cut-off within their property line at an expense of less

than $2. The charge for cutting off and turning on the water would thus be avoided except in case of delinquency on the part of the consumer. Upon the whole, appellants have failed to sustain their claim that appellee's rules are unreasonable.

Aside from any question of estoppel by former adjudication, it may be said that the evidence is sufficient to sustain the chancellor's finding, and such finding will not be disturbed on appeal, where it is in accord with the evidence or where the evidence may leave the mind in doubt as to the correctness of the chancellor's finding. Green v. Davis, 253 Ky. 105, 68 S. W. (2d) 750; Andrews v. Wilson, 253 Ky. 237, 69 S. W. (2d) 343. These conclusions render it unnecessary to discuss some other grounds upon which the chancellor's finding is based.

Wherefore the judgment is affirmed.

Whole court sitting.