## Wood et ux. v. Williams.

Nov. 8, 1944.

W. S. Heidenberg for appellants.

Woodward, Dawson & Hobson for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

The action was instituted by appellants, Lorenzo K. Wood and Chloe Smith Wood, his wife, seeking an injunction to prevent appellee, Albert P. Williams, from performing any act which would result in the discontinuance of appellee's use of a private water service line extending from the main supply line of the Town of Anchorage Water System through appellee's property into appellants' residence and outbuildings. In the year 1900 Amanda Bernheim became the owner of a large boundary of land. Her husband, Isaac W. Bernheim, succeeded to its ownership and possession in the year 1922. The property was divided into nine tracts in the year 1924, one of which now is owned by appellants, another by appellee. The Williams tract lies between the Wood tract and the main water service line of the Town of Anchorage. The original Bernheim home is situate on the Wood tract. In the year 1917 Mrs. Bernheim constructed a private water service line into her residence and outbuildings, connecting with the water system owned and operated by the Town of Anchorage. The private line extended through the property now owned by appellee. Upon purchasing the property in the year 1936, appellee connected his residence with the private service line. When Wood bought the Bernheim home place in 1937, and sought to obtain service to his residence and outbuildings, he learned that the Board of Trustees of the Town of Anchorage would not service both properties through the same meter or same line. He thereupon prepared a contract, which was executed by him and Williams, and, by resolution, adopted by the Board of Trustees of the Town of Anchorage, whereby the Town agreed to furnish water to both residences through the then existing service line and single meter, in consideration of certain promises on the part of Williams and Wood. The pertinent parts of the agreement are as follows:

"* * * all water supplied through said single service line shall be billed to and paid for by Dr. Williams * * *

"It is a further condition of this resolution that if at any time the Board of Trustees of the Town of Anchorage, Kentucky, or Dr. Williams deem it necessary

or desirable to require the owner of the Lorenzo K. Wood property to lay a separate water service line and install a separate water meter, that said Board of Trustees, or Dr. Williams, may require the owner of Judge Wood's property to install such separate water meter and such separate water service line.''

Despite this contract, appellants claim an easement over the Williams property by prescription, the existence of which was alleged to have been known by appellee at the time he purchased the property. It is the contention of appellee that no easement was ever acquired; but that, if wrong in this contention, the respective rights of the parties thereunder were terminated by the contract of 1937, and that thereafter the use of the water line by the Woods was permissive only, and subject to termination at the will of Dr. Williams.

We agree, as did the Chancellor, with appellee's contention. Whatever rights Wood, through his predecessors in title, may have acquired to the use of the line in question by prescription, were waived when he entered into the contract with Williams and the Board of Trustees of the Town of Anchorage. At the time he originally desired to service his residence with water, he had the privilege of standing upon his alleged prescriptive right, and then and there litigating such right with Dr. Williams. Neither could compel the Town of Anchorage to service both homes through the same private service line or meter. When he chose to enter into a, contract with the Town of Anchorage and Dr. Williams, Wood waived whatever right he may have acquired by prescription; and from that day forward used the line under the conditions of the contract he entered into. One of those conditions was that he would install a separate line and meter upon Dr. Williams' demand so to do. It is argued that there was no consideration for this agreement. With this we cannot agree. The Town of Anchorage refused to enter into the agreement, unless Dr. Williams agreed to be responsible for the payment of all water which passed through the line. This agreement on the part of Dr. Williams was a promise to perform that which, prior to the agreement, he was not legally bound to do. By failing in his agreement to pay for the service rendered to Judge Wood, Dr. Williams would have subjected himself to the loss of service to his own residence. Thus,

the consideration amounted to more than the monetary consideration involved in the guarantee to the Town of Anchorage. Appellants have been operating under the contract for many years. After receiving the benefit of the contract, they must accept the burden assumed in the agreement. We think the decision in Raleigh v. Clark, 114 Ky. 732, 71 S. W. 857, 858, 24 Ky. Law Rep. 1554, to be conclusive of the question. Clark owned a tract of land in Daviess' County. Raleigh owned land adjacent to, and lower than, that of Clark. Before Raleigh acquired his tract, Clark had permitted another adjacent land·owner (Mattingly) to cut a ditch through the Clark land, which resulted in casting surface water onto the Raleigh farm in greater quantities than would have naturally flowed thereon. Clark dug another ditch on his own land, which precipitated additional waters onto the Raleigh land. After Raleigh purchased his farm, Clark and he entered into a contract by which Clark agreed to extend and keep open the Mattingly ditch through Raleigh's land to a creek nearby. The parties operated under this agreement for several years, and until Clark failed to clean the ditch on Raleigh's land. The ditch filled, flooding Raleigh's land; whereupon the latter brought suit against Clark for damages. Clark pleaded limitations, alleging a prescriptive right had been acquired to cast the waters onto Raleigh's land extending for a period in excess of fifteen years before Raleigh acquired the property. In disposing of this defense, the Court said:

"The contract between Clark and Raleigh was admitted by both parties. It had been carried out by them for a number of years. After getting the benefit of this contract, Clark must take it with the burden. He cannot be permitted to say that he had a right to maintain the Mattingly ditch, for, whatever his rights may have been, he waived them, rather than take the chances of standing upon them; and after the lapse of many years, when necessarily the evidence as to whether the ditch was there by permission or as a matter of right has been obscured by time, he cannot be allowed to go back now and insist upon a matter which he then deliberately waived."

The pleadings raised the issue that it would be inequitable to require Judge Wood to abide by his agreement, because of the allegation that he is presently un-

able to secure a priority order from the War Production Board to enable him to purchase the pipe necessary for a separate service line. This allegation was denied, and the Chancellor permitted the parties to introduce proof on the issue raised. It was conclusively shown that such a priority order was not necessary, and that a sufficient quantity of pipe is available for purchase on the open market.

The Court's judgment dismissing the petition and refusing the injunction must be, and hereby is, affirmed.

Whole Court sitting.