**MIDDLETOWN WATER DISTRICT,**
Appellant,

v.

**Thomas TUCKER, Appellee.**

Court of Appeals of Kentucky.

Dec. 2, 1955.

Daniel B. Boone Tilford, Wetherby, Dobbins & Boone, Louisville, for appellant.

Robert P. Hobson, Woodward, Hobson & Fulton, Louisville, for appellee.

MONTGOMERY, Judge.

The Middletown Water District is engaged in operating and maintaining a water system for the unincorporated area known as Middletown in Jefferson County, Kentucky. It was created by authority of KRS 74.010, and has been in existence and operation since about 1938.

Thomas Tucker, appellee, owned a parcel of land at the corner of Evergreen and Brinley Avenues in Middletown. His residence was on the corner, facing Evergreen Avenue. It had a water service connection with a 6-inch main extending through this street. The remainder of the lot extended to the rear of the residence along the north side of Brinley Avenue. There was no water main on Brinley Avenue.

Appellee has been supplied water at his residence under an application dated July 13, 1945, and accepted by the Water District, appellant herein. By this contract appellee agreed to be governed by the rules and regulations of appellant.

Appellant obtained water from the Louisville Water Company. Their contract provided that no service pipe was to be installed for a customer unless his property abutted

on a street or roadway in which a water main had been installed, and then the service connection was to be extended perpendicularly across the road from the main to the customer's line. Subsequently, appellant adopted a regulation permitting service connections only with houses facing a street or road with a water main therein.

After the adoption of the rule, appellee built a house on the portion of his lot fronting upon Brinley Avenue, and in the rear of his residence. Without making application to appellant, appellee installed water service in the new house by extending the water line serving his residence. The installation was made without notice to, or consent of appellant and without the installation of a second meter. Appellee knew of appellant's rule forbidding such service.

After discovery of the installation, appellant gave notice to appellee to discontinue its use and ordered him to comply with its regulation. Upon the failure of appellee to obey this action was filed to compel, by mandatory injunction, compliance with the regulation and discontinuance of the use of the service connection.

By answer appellee offered to pay for the installation of a separate meter for the second house. He pleaded that the regulation adopted by appellant was arbitrary, unreasonable, and unenforceable, and that appellee was being discriminated against in the enforcement of the regulation, in that appellant was furnishing water to other houses which did not face a street or road in which there was a water main. By reply, appellant admitted that there were other water users who had not complied with the regulation, but it was shown by testimony and by stipulation that all noncomplying users, with two possible exceptions had made installations prior to the adoption of the regulation.

After hearing proof, the Chancellor dismissed the case without a finding of fact or a conclusion of law. The testimony was substantially without dispute. The question is whether the regulation of appellant was unreasonable, arbitrary, or discriminatory, and, therefore, unenforceable.

■ Appellant contends that the regulation was necessary for the orderly expansion of the Water District and was essential to provide adequate fire protection for the water users of the District. In view of the stipulation that all noncomplying users, with two possible exceptions, had connected prior to the adoption of the regulation, appellee's contention is without merit that the attempt to enforce the regulation against him was discriminatory. Appellee also insists that the regulation was unreasonable and arbitrary, in that it undertook to tell appellee which way his house must be placed in order to receive water service, and that such was a collateral matter not subject to reasonable regulation. He argues the meaning of the regulation to be that if he had built the new house facing Evergreen Avenue instead of Brinley Avenue there would have been no violation of the regulation; therefore, the effect of the regulation was to tell him how he was to face his house, and, consequently, it was unreasonable and unenforceable.

■ A water district is authorized to make reasonable regulations for the disposition and consumption of water. KRS 74.080. The common law rule is very similar. 56 Am.Jur., Section 84, pages 986–987, Waterworks. Public service corporations, such as a water district, municipality, or water company, have the right to make, and enforce, reasonable rules and regulations for the conduct of their business. Tackett v. Prestonsburg Water Co., 238 Ky. 613, 38 S.W.2d 687; Combs v. Prestonsburg Water Co., 260 Ky. 169, 84 S.W.2d 15; City of Hazard v. Minge, 263 Ky. 535, 92 S.W.2d 768.

■ In Specht v. Louisville Water Co., 117 Ky. 414, 78 S.W. 142, a regulation requiring that each house be served through a single meter was upheld as reasonable. A like regulation was held reasonable in City of Raceland v. Colvin, 265 Ky. 12, 95 S.W.2d 1113. Similarly the regulation of appellant sought to control the orderly ex-

pansion of the water system by extending service only to those houses facing, or abutting on, the streets in which water mains had been installed. This is not a regulation to control the manner in which houses should face the street but is a regulation to control the water service connections. Had the second house of appellee been constructed facing Evergreen Avenue, it still would not have been eligible for water service. In the meaning of the rule, the house facing the street or road must occupy that portion of the lot abutting or fronting on the street or road. The lot upon which appellee constructed the second house abutted the rear of appellee's lot on Evergreen Avenue. It may readily be seen that confusion and controversy could arise should the second house and lot be sold. Such a situation gave rise to the difficulty involved in Wood v. Williams, 299 Ky. 167, 184 S.W.2d 799. In fact, during the instant controversy appellee conveyed the lot to his son, and it was reconveyed before suit was brought. The use by two customers of a single meter would deprive the water district of the revenue due it and result in a lower and more favorable rate to one of the users. To permit water lines and connections to cross lots at random without installation of meters could cause endless confusion and disrupt the orderly conduct of the water system.

It also appears that the rule is reasonable because of the necessity for providing an adequate fire protection for the customers of the Water District. This is one of the purposes for which such districts may be organized. KRS 74.010(2). The proof showed that the authority fixing the fire insurance rates for the Middletown area prohibited a rate reduction unless the fireplug was installed in a 6-inch main. It was necessary to control the installation of connections and laying of the water mains in order to provide the requisite fireplugs on the 6-inch main. Appellee showed that the object in passing the regulation in controversy was to force the landowners on Brinley Avenue to build an extension of the water system by installing a 6-inch main on their street. This, in itself, was enough to indicate that the regulation was not for the purpose of controlling the location of houses but was a regulation to control the water system expansion and to provide fire protection. As such, it was reasonable.

Judgment reversed for entry of judgment consistent with this opinion.