## Buckeye Garment Company v. Hieatt, et al.

(Decided November 16, 1917.)

### Appeal from Franklin Circuit Court.

1. Equity—Multiplicity of Suits.—Where a great number of separate suits for small sums are instituted in an inferior court by a large number of plaintiffs against a common defendant, and where the suits all present common questions of law and fact, and the determination of one must be the judgment in all, the single defendant may, by an equitable proceeding in the circuit court, enjoin the prosecution and actions in the inferior court and require the complainants to present their claims in the equitable proceeding in the circuit court, especially so if the actions be baseless.

2. Equity—Multiplicity of Suits.—A bill in equity is not necessarily multifarious because a number of persons are joined as defendants, if the contention of each defendant presents common questions of law and fact which may be determined in one action to the advantage of all.

3. Lotteries—Tailor's Suit Club.—A garment company organized a club of sixty persons, each member agreeing to pay thirty cents per week, for sixty weeks, at the end of which time each member was to receive a suit of clothes or overcoat, it being further agreed between the garment company and the members of the club that the company would give away one suit, or other garment, to a member of the club each week, the lucky person to be ascertained. by some method adopted by the management of the company; the club members becoming dissatisfied renounced their contract and instituted separate actions in the quarterly court to recover the amounts paid in on the ground that the arrangement was a lottery scheme; in such case the plaintiffs are not entitled to the relief, because if the arrangement was in fact a lottery they were pari delicto and the court will not aid them to recoup, and if the arrangement did not amount to a lottery but was a bona fide binding obligation they will not be heard to deny their undertaking.

MILLER & MILLER for appellant.

PAUL GAINES and W. C. MARSHALL for appellees.

Opinion of the Court by Judge Sampson—Reversing.

The Buckeye Garment Company is a corporation engaged in selling clothing upon the installment plan to members of clubs organized in different communities. Each club consists of sixty members, and each member pays thirty cents, per week, for sixty weeks, at the end of which time he receives a suit, overcoat, or other garment, according to his order. It is provided, however,

in the arrangement between the company and club members that one suit, overcoat or other garment shall be given away each week to some member of the club. The contract does not provide just how the lucky member shall be found. It is asserted by the appellees, who are club members, that the method of arriving at the lucky person upon whom the suit is to be conferred amounts to a lottery coming within the prohibition of sections 2573 and 2575, Kentucky Statutes. This, however, is denied by appellant company, it averring that the arrangement by which a suit is given away is purely an advertising scheme legitimate in its detail. A club was organized in Franklin county and was in operation at the commencement of this proceeding in the Franklin circuit court. Some members had paid in more than others, the amounts ranging from $2.10 to $11.10. The dues of the club members are collected each week by agents of the company. Seventy-nine club members, conceiving that the arrangement between them and the company amounted to a lottery and was in violation of law, renounced their contracts and each one brought a separate suit against the company, in the Franklin quarterly court, to recover the sums paid by them to the garment company, alleging that the payments were induced by the unlawful and wrongful statements, representations and fraud of the defendant company. The petitions were all in exactly the same form, except for the names of the parties and amounts sought to be recovered. The club members also appeared before the Franklin county grand jury and procured indictments against the garment company and its agents for carrying on a lottery, and the agents were arrested and the business of collecting from the club members was brought to a close. Thereupon the garment company brought this action in the Franklin circuit court, seeking an injunction against the seventy-nine plaintiffs in the quarterly court suits and their two attorneys, enjoining and restraining them from the further prosecution of their actions in the quarterly court, and to prevent further proceedings in these cases, and asked that all plaintiffs in the quarterly court cases be required to present their claims, if any they have, in this proceeding in the circuit court; and, further, that a writ of prohibition issue against the judge of the quarterly court restraining him from filing other similar actions or taking steps in the suits then there pending.

A general demurrer was interposed to the petition in the circuit court, and upon hearing was sustained. The

plaintiff company declining to plead further, the petition was dismissed and the injunction dissolved. From this judgment, dismissing the petition and dissolving the injunction, the garment company appeals, insisting:

First: That where there is a multiplicity of baseless actions, all involving a common question of law by different plaintiffs, against the same defendant, pending in an inferior court for such amounts as to preclude an appeal to the circuit court, an injunction will lie against the judge of the inferior court and the plaintiffs in the actions therein to stay such multiplicity of actions and the hardships incident thereto.

Second: Unless the Buckeye Garment Company's method of doing business was unlawful, appellee's actions in the Franklin quarterly court were baseless and without legal or equitable merit; and,

Third: That appellant's method of business was not a lottery nor in any way unlawful.

It is also asserted in brief of counsel that unless the business conducted by appellant company comes within the prohibition contained in sections 2573 and 2575, Kentucky Statutes, which denounce all lottery schemes, then plaintiffs' actions in the quarterly court were baseless and their prosecution should be enjoined by the circuit court. This statement is good so far as it goes, but does not state the whole proposition. In neither state of case can the plaintiffs in the quarterly court maintain these actions if the allegations of this petition be accepted. If the business conducted by appellant company amounts to a lottery, it is prohibited by sections 2573 and 2575, Kentucky Statutes, and the plaintiffs in the quarterly court actions were *pari delicto,* and have no standing in court. They would therefore be without remedy. On the contrary, if the contracts were not void as against the lottery statute, were valid contracts between the garment company and its club members, then the members of the club, suing as plaintiffs in the quarterly court, are not entitled to the relief sought because they will not be permitted to renounce a valid contract into which they have voluntarily entered. Thus it will be seen that it is immaterial in this action whether the money sued for in the quarterly court was obtained on unlawful contracts or valid agreements, the actions below are baseless and cannot be maintained.

The right of the Buckeye Garment Company to enjoin the judge of the quarterly court from proceeding to a trial of the seventy-nine different cases instituted by

that number of club members in the quarterly court, and
to prevent the institution of other similar actions and to
have the seventy-nine suits as well as such others as are
threatening to be instituted, heard and determined in one
action is disputed by appellees upon the grounds that the
claim of each plaintiff in the quarterly court is separate
and distinct.

It is a well recognized rule that courts of equity have
jurisdiction to prevent a multiplicity of suits in certain
cases, but it is sometimes difficult to draw the distinction
and properly apply the rule. In this action it is alleged
that seventy-nine suits have already been instituted
against this plaintiff and that fifty more similar ac-
tions will be instituted, unless injunction be granted, and
that all involve the same questions of fact and law; that
the costs of defending these several actions in the quar-
terly court would be a hardship and great inconvenience
to this plaintiff; that the amounts sued for are less than
the jurisdictional amount of the circuit court on appeal,
and the judgments obtained in the quarterly court would,
therefore, be final and conclusive; that the whole sum
sought to be recovered in the several suits in the quar-
terly court amount to a large sum in the aggregate and if
these actions are prosecuted in the quarterly court and
judgments obtained there, even upon these baseless
claims, plaintiff would be without remedy.

Generally where the facts are similar and the law
applicable to one case must be applied to all, one de-
fendant resisting a great number of similar actions may
have relief in equity, upon proper application, to pre-
vent a multiplicity of suits, and require the parties to
present their claims in one action, especially where vex-
atious litigation may be avoided and no unnecessary de-
lay will result to the plaintiff, and, a speedy determina-
tion of the several claims may be had. This rule is
rested largely upon the necessities of the case; some
courts bottom it upon the convenience of the parties. In
support of such equitable proceeding it is asserted that
the business of the courts are greatly facilitated, afford-
ing opportunity to all litigants to have their day in court,
and at the same time determining in one action numerous
causes which present similar questions of law and fact
in the time ordinarily required for one. This rule, how-
ever, has no application where the several plaintiffs have
distinct and separate causes of action presenting differ-
ent states of fact and multitudinous questions of law,
because to join and hear such actions together in one suit

would not advance the business of the court nor aid the parties, each claim eventually presenting all the elements of a separate suit. Pomeroy in his work on Equity Jurisprudence, vol. 1, section 245, states the rule as follows:

"Where, from the nature of a wrong, and from the settled rules of the legal procedure, the same injured party, in order to obtain all the relief to which he is justly entitled, is obliged to bring a number of actions against the same wrongdoer, all growing out of the one wrongful act and involving similar questions of fact and of law; . . . 2nd: Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination. . . . 3rd: Or where a number of persons have separate and individual claims and rights of action against the same party, A, but all arise from the same common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or even by one person suing by himself alone. . . . 4th: Where the same party, A, has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as co-defendants," one action may be prosecuted or defended for the use and benefit of all.

The third rule stated above has application to cases like the one under consideration, but the courts of last resort of the several states have not uniformly applied the rule. Indeed, in some states its correctness is questioned. This court, however, in the case of Illinois Central Railway Company v. Baker, et al., 155 Ky. 512, applied the rule with some slight modifications. In that case forty-one coal miners instituted actions in the quarterly court against the railroad company carrying the product of the mines, claiming damages of the railroad company for its failure to provide sufficient railroad gons in which to load and transport the coal mined

by these coal diggers, by which they were thrown out of employment and lost wages. The sums sought in these forty-one separate cases were each less than twenty-five ($25.00) dollars, and were not, therefore, appealable to the circuit court. Of course, each of those actions were absolutely baseless because there was no privity between the coal digger, who worked for the mining company, and the railroad company, which transported the product of the mines. A suit in equity was instituted in the circuit court to stay the prosecution of the forty-one suits by the coal diggers in the quarterly court, and to require them to present their claims in one action in the circuit court; and further to restrain their lawyers and the judge of the quarterly court from further proceeding in the case, or from instituting new actions of similar nature against the railroad company. In sustaining the contention of the plaintiffs in the equitable action in that case and enjoining the prosecution of the forty-one actions in the lower court, this court announced the doctrine as follows:

"We think there is a broad distinction between invoking the jurisdiction of a court of equity to prevent a multiplicity of suits by different plaintiffs, each having a separate, distinct meritorious cause of action, and invoking this jurisdiction to prevent a multiplicity of suits by plaintiffs who have not a legally enforceable demand against the defendant. And so, if these coal diggers have not a meritorious demand against the defendant railroad company, there are many reasons why the jurisdiction of a court of equity should be invoked to require all their suits to be heard and determined in one action, that could not be invoked if each of them had a meritorious claim. If no one of the plaintiffs in the quarterly court is entitled to recover any amount against the defendant company in any of these suits, it would be an extraordinary hardship on the defendant to put it to the expense, inconvenience and cost of defending this multitude of suits in the quarterly court, and be an intolerable condition of affairs if, after defending them to the best of its ability, a binding and unreviewable judgment should be rendered against it in each case for the amount claimed and it be compelled to pay the large sum that would be required to satisfy these various judgments, without an opportunity to have its rights determined by a court speaking with more authority than the quarterly court."

"Having in mind the distinction that should be observed between the assertion of valid and groundless claims, we think that when a large number of cases arising out of the same transaction or resting on the same common ground, have been instituted by different plaintiffs against the same defendant, and none of the plaintiffs have a legally meritorious or enforceable demand against the defendant, the jurisdiction of a court of equity may be invoked to the end that the rights of the parties, plaintiffs and defendant, may be heard and determined in one proceeding, thereby saving the defendant from the unjust burden of defending a number of separate suits. In this class of cases the exercise of the equitable jurisdiction referred to does not prejudice any substantial rights of the plaintiffs, because they have no substantial rights that can be prejudiced. It does not deny to them the right to seek lawful redress in any court of justice they may select, having jurisdiction, to hear and determine the case, because they have not suffered any injury entitling them to have redress. It does not take away from them the right to have meritorious relief in a court established for the purpose of giving relief to parties deserving of it, because they have no right to the relief sought."

In that case the forty-one suits brought by the coal miners were required to be heard in one action in a proceeding similar to the one under consideration. While it was not there specifically held that plaintiffs holding a number of like claims, such as the ones in the case at bar, could unite and bring their actions in the circuit court, it was held that where a great number of baseless suits were instituted in a lower court by a large number of plaintiffs acting in concert, the amount involved in each case being less than the jurisdiction of the circuit court, the common defendant might bring an action in equity in the circuit court to enjoin proceeding in the inferior court, and to require the several plaintiffs in the lower court to present their claims for adjudication in one proceeding in the circuit court for determination and judgment. That is precisely what is sought here. In this action seventy-nine persons are made defendants because they have instituted separate suits in the Franklin quarterly court against this plaintiff for sums ranging from $2.10 to $11.10, each, all involving the same questions of fact and law. No single claim is large enough to give the circuit court jurisdiction upon appeal.

It is charged these claimants are in a conspiracy acting together to mulch this plaintiff in cost and to unduly harass it. It is alleged in the petition that the claims sued on in the quarterly court are groundless, because it is an attempt on the part of the plaintiffs in this case to recover sums of money which they have paid upon an enforceable contract, and which contract is not in contravention of any statute nor against public policy. As stated above, we do not conceive it important here to determine whether the contracts are valid or not. If they be meritorious actions, it is for some reason not shown in this petition to which the demurrer was sustained. Clearly the averments of the petition in this case bring it within the rule announced in the case of I. C. Railway Company v. Baker, &c., *supra,* and the demurrer should have been overruled. Upon a return of the case to the circuit court an order should be entered, overruling the demurrer to the petition and reinstating the injunction and directing that the plaintiffs in the quarterly court cases be allowed, if they so desire, to file their claims in this action. All questions involved should then be heard and determined by the circuit court. If it be ascertained upon a hearing that the business of the garment company amounts to a lottery, then the plaintiffs in the quarterly court actions come within the prohibition declared in section 2575, Kentucky Statutes, and are *pari delicto,* and are not entitled, therefore, to relief. If, however, it should be determined that the contracts between the garment company and the club members are valid, then these defendants are not entitled to be relieved of their voluntary undertaking. However, the garment company should not be allowed to appropriate the moneys paid in by the several club members without a full performance of the contract. If, for any reason, the contracts are unenforceable, or the company is not in position to carry out its contracts, then the appellees are entitled to relief.

Judgment reversed for proceedings consistent with this opinion.