HOUSTON HEIGHTS WATER & LIGHT ASS'N et al. v. GERLACH et al. (No. 7781.)

(Court of Civil Appeals of Texas. Galveston. Nov. 6, 1919.)

1. INJUNCTION ⬡⟿19—PREVENTION OF MULTIPLICITY OF SUITS.

Equity will grant an injunction to prevent a multiplicity of suits; the question of whether, in a particular case, equity will assume jurisdiction, depending, if case is not covered by a controlling precedent, upon the merits of the particular case, the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the parties, the points to be contested, and the result to follow as to whether the interests of any of the parties will be unreasonably overlooked or obstructed.

2. EQUITY ⬡⟿44—JURISDICTION OF DISTRICT COURT IN PROTECTING PARTIES IN OTHER COURTS.

The exercise by district court of equity jurisdiction to protect the rights of parties in other courts is not an encroachment upon the jurisdiction of the other courts, even when it prevents such courts from proceeding with the trial of cases within their jurisdiction.

3. EQUITY ⬡⟿44—JURISDICTION OF DISTRICT COURT TO GIVE RELIEF IN JUSTICE COURT.

The exclusive jurisdiction given a justice court in certain classes of cases was not intended to limit or restrict the equity jurisdiction of the district court to give relief against wrong

and injustice, when the justice court does not possess adequate power to grant such relief.

4. PLEADING ⬡⟿214(1)—GENERAL DEMURRER ADMISSION OF FACTS.

The facts alleged in petition must be taken as true on general demurrer.

5. INJUNCTION ⬡⟿26(4) — MULTIPLICITY OF SUITS IN JUSTICE COURT FOR PURPOSE OF ANNOYING DEFENDANTS.

Where seven members of the same household, at the instigation of one of them, brought separate damage suits against defendants for same alleged wrongful act, and where the suits were wholly without merit and for the purpose of harassing and annoying defendants and causing them to expend attorney's fees and costs and were brought in justice court, where they could not be consolidated, and for an amount just below amount which would have entitled defendants to an appeal, for purpose of preventing such appeal, equity will enjoin further prosecution of suits in justice court and require them to be tried in one proceeding in district court, since such proceeding will be a relief to defendants and will work no hardships to the plaintiffs.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by the Houston Heights Water & Light Association and another against Harry C. Gerlach and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, for appellants.

F. Charles Hume, Jr., and Harry C. Gerlach, both of Houston, for appellees.

PLEASANTS, C. J. This is a suit for an injunction brought by appellants, Houston Heights Water & Light Association and the Houston Gas & Fuel Company, against Harry C. Gerlach and six other named defendants. The trial court sustained a general demurrer to plaintiffs' petition, and, plaintiffs declining to amend, their suit was dismissed.

For cause of action appellants alleged that on the 17th day of October, 1918, each of the appellees herein filed suit in the justice court of precinct No. 1, Harris county, Tex., Leon Lusk, justice of the peace, said suits being numbered on the docket of that court 28151 to 28158, respectively, and that citations in the seven suits were served on the same day upon F. D. Murphy as agent of the two appellants, a copy of the citation in each case being attached to their petition.

Appellants further alleged that all of the plaintiffs in the seven suits are relatives of either the said Gerlach or his wife, and that all of them live with Gerlach as members of his family at No. 1202 Rutland street, in Houston Heights; that each of said suits is based on identically the same alleged cause of action; that the cause of action alleged

in each of the seven suits is that appellees were residing at 1202 Rutland street, in the city of Houston Heights, Harris county, Tex.; that appellants were obligated to furnish appellees water, and that on the 15th day of October, 1918, appellants, without notice and without presenting a bill, shut off the water in front of appellees' residence; that the agent of appellants used no discretion or ordinary care in determining his right or authority to cut off the water; and that the water shut off deprived appellees of the use thereof in the middle of a raging and severe epidemic of grippe and pneumonia.

Appellants alleged that they have a valid and sufficient defense to each and all of the suits filed by appellees, in this, that appellant Houston Gas & Fuel Company had no connection whatsoever with the transaction involved in these suits; that it did not own the water system during the time appellees were being supplied with water; and that the agent who cut off the water as referred to in the suits of appellees was not in fact an agent of the Houston Gas & Fuel Company. Houston Heights Water & Light Association had previously had a contract with J. A. Jackson, whereby it was supplying water through its water system to the said J. A. Jackson at 1202 Rutland street in Houston Heights, and J. A. Jackson had for a number of years been paying all the water bills for such service, and such payments were made by J. A. Jackson until about the 1st day of July, 1918. On information and belief appellants alleged that on or about July 1, 1918, J. A. Jackson sold and disposed of the property to one L. F. Harris, and that from and after that date the bills of appellant Houston Heights Water & Light Association for water remained unpaid, although service was maintained and water supplied at that number as had previously been done; that in the early part of August, appellee Harry C. Gerlach, with his family, moved into and occupied the house known as No. 1202 Rutland street, under some contract or agreement with L. F. Harris; and that Gerlach with the other appellees lived and resided at said number continuously up until the filing of this suit.

Appellants alleged that until after the water was cut off neither of them had any contract whatever with either L. F. Harris or with any of the appellees for the supplying of water at said place, although Gerlach and the other appellees had been using said water, as appellants were informed and believe, from on and about the 1st day of August, 1918, until the 15th day of October, 1918; that the collector of the Houston Heights Water & Light Association made four calls on various dates in an effort to collect the bills due for the water, and that on three of these visits members of the household of appellee Harry C. Gerlach, and some one of the appellees, gave various excuses for failing to pay the bill; that, after such repeated efforts to collect the sum admittedly due, the Houston Heights Water & Light Association, on the 15th day of October, 1918, cut off the water from said premises, as it had a perfect right to do and as it should have done several weeks previously; that if appellees had been using water from the system of appellant, as alleged in the suits filed by them, they had been using the same without paying therefor and without having any contract whatsoever with appellant therefor, and appellant had a perfect right to cut off the supply of water; that, after the water was cut off on the 15th day of October, L. F. Harris called at the office of appellant Houston Heights Water & Light Association, on the afternoon of October 16, 1918, and paid to appellant all bills due up to October 1, 1918, for water theretofore supplied, and about 5:30 o'clock that afternoon the water was again turned on.

Appellant further alleged, on information and belief:

That, after the bill was so paid by L. F. Harris, the appellee Harry C. Gerlach refunded and repaid to Harris the bill covering the months of August and September, the period the premises had been occupied by Gerlach and the other appellees in this suit.

That appellees, neither individually nor collectively, had any contractual relations whatsoever with either of the appellants, and had no right to require these appellants, or either of them, to furnish water service without having previously contracted therefor. That said suits were therefore wholly without foundation.

That all of the suits brought by appellees were based on identically the same transaction, and that the testimony of appellants in opposition to the suits will be in each case exactly the same. That all of the suits were filed by appellee Harry C. Gerlach, as attorney, and were all instituted and the filing thereof induced by Gerlach. That the suits were brought in the justice court for amounts accurately placed within the exclusive jurisdiction of that court, so that no appeal therefrom in any case could be had. That, if the cases are tried in the justice court before a jury, appellants will be unable to have the jury charged as to the law in the case, and, if had before the court, will be had before a judge not required to be learned in the law.

That the purpose and effect of the suits being so brought was to harass and annoy these appellants and to cause them to incur the expense of attorney's fees and other costs in defending the seven suits, all of which are without merit or basis. That, unless appellees are restrained and enjoined from further prosecution of these suits in the justice court, appellants will suffer irreparable injury, and their employés will

be taken away from work to testify as witnesses in the trial of seven different suits, and appellants will incur unusual and unnecessary cost and expenses as attorney's fees, witnesses' fees, and other costs, all of which charges will be entirely out of proportion to the amounts involved, and far in excess of what the expense would be to appellants if one trial of all of the causes were had.

That the appellees and each of them are wholly insolvent, and that, even though appellants should win the seven suits, they would be unable to collect from the appellees the costs incurred by them in the defense of such suits.

Appellants then prayed for a writ of injunction enjoining and restraining, first, temporarily during the pendency of this suit, and on final hearing perpetually, appellees from further prosecuting or taking judgments in any of the suits filed by them, and likewise from filing any further suits in the justice court in the state of Texas on the same alleged cause of action, and further that appellees be required to implead in this suit their said cause of action and to determine all issues between the parties in this suit.

The petition was properly verified.

A temporary restraining order was granted by the Honorable William Masterson, judge of the Fifty-Fifth judicial district court, restraining appellees and each of them from further prosecution of said suits.

The appellees answered by general demurrers and a general denial.

Upon hearing before the court, the demurrers to appellants' petition were sustained, and, upon their declining to amend, judgment was rendered in favor of appellees.

The only assignment of error presented by appellants, and the proposition thereunder, are as follows:

"The court erred in sustaining appellees' general demurrers to appellants' petition, for the reason that said petition presented a case for the interposition of a court of equity to prevent a multiplicity of suits, in that it sought to enjoin the separate prosecution of seven separate suits brought in the justice court by seven members of the same household, all of whom were insolvent, for damages growing out of one and the same alleged wrongful act, and involving the same questions of law and substantially the same or similar questions of fact, where no appeal would lie from the judgment of the justice court, and where said petition showed a good and sufficient defense to all of said suits."

First proposition under first assignment of error:

"A court of equity, in order to prevent a multiplicity of suits, will enjoin the separate prosecution of a number of suits brought by various members of the same household, all insolvent, for damages growing out of one and the same alleged wrongful act, and involving the same questions of law, and substantially the same or similar questions of fact, where no appeal would lie from the judgment of the justice court in any one of said cases, and where the defendants in all of said cases have the same good and sufficient defenses."

[1] The authorities are conflicting upon the question presented by this assignment. No ground of equity jurisdiction is more firmly established than the prevention of a multiplicity of suits, but there is much divergence of opinion as to the limits of the doctrine and its proper application in particular cases.

Mr. Pomeroy, in his great work on Equity Jurisprudence, in stating the several conditions in which a multiplicity of suits could arise which would call for the exercise of equity jurisdiction for their prevention, by settling all the rights and all the controversies in one judicial proceeding, enumerates four classes of controversies. Classes 3 and 4 are thus defined:

"(3) Where a number of persons have separate and individual claims and rights of action against the same parties, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit by all these persons uniting as coplaintiffs, or by one of the persons suing on behalf of the others, or even by one suing for himself alone. The case of several owners of distinct parcels of land upon which the same illegal assessment or tax has been laid is an example of this class.

"(4) Where the same party has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as codefendants. It should be observed in this connection that the prevention of a multiplicity of suits as a ground for the equity jurisdiction does not mean the complete and absolute interdiction or prevention of any litigation concerning the matters in dispute, but the substitution of one equitable suit in place of the other kinds of judicial proceedings, by means of which the entire controversy may be finally decided." Pomeroy's Eq. Jur. vol. 1 (3d Ed.), § 245.

This learned author, in section 255 of the volume before cited, calls attention to the conflict in the authorities upon the question of what must be the essential elements and external form of the common rights, interests, or claims held by a number of persons against a single party, or by one party against a number of others which would authorize a court of equity to exercise its jurisdiction to prevent a multiplicity of suits. Many courts of the highest authority hold that such community of interest must be in the very right or thing which forms the subject-matter of the controversy or claims, but Mr. Pomeroy says:

"The weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right,' or of 'interest in the subject-matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. In a majority of the decided cases this community of interest in the questions at issue and in the kind of relief sought has originated from the fact that the separate claims of all the individuals composing the body arose by means of the same unauthorized, unlawful or illegal act or proceeding."

This statement of the rule has been vigorously assailed by many of the courts, and the conflict seems to increase rather than diminish. We think the proper and reasonable solution of the question is that given by the Supreme Court in the case of Hale v. Allison, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380. In that case it is said:

"Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes with the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested, and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff, and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction.

"We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of right or interest in the subject-matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy."

In the judicial system of this state the district court is made the reservoir of equity jurisdiction and given the power to exercise that jurisdiction for the protection of the rights of the citizens in all cases in which such rights are invaded, and no other court in this state has the power to give adequate protection against such invasion.

[2] The exercise of this jurisdiction by the district court cannot be regarded as an encroachment upon the jurisdiction of other courts, even when it prevents such courts from proceeding with the trial of cases within their jurisdiction.

[3] The exclusive jurisdiction given a justice court in certain classes of cases was not intended to limit or restrict the equity jurisdiction of the district court to give relief against wrong and injustice when the justice court does not possess adequate power to grant such relief.

The petition in this case alleges facts which, if true, show that the suits sought to be enjoined are wholly without merit and were brought at the instigation of defendant Gerlach, all of the defendants being members of his household, for the purpose of harassing and annoying the plaintiffs and causing them to expend large sums in attorney's fees and costs in defending the suits. The suits cannot be consolidated in the justice court and tried as one case so as to avoid the costs, loss of time, expense, and annoyance necessarily incident to a separate trial of each suit. The amount claimed in each suit was fixed just below the amount necessary to entitle plaintiffs to appeal, for the purpose of preventing such appeal and thus requiring plaintiffs to have their defenses finally determined in a court presided over by an officer who is not required to know the law, and not permitted to instruct the jury as to the law of the case.

[4, 5] If the facts alleged are true (and upon general demurrer they must be taken as true), we think they call for the interposition of the equitable power of the district court. The remedy sought by appellants is a relief to them and will work no hardship upon appellees, who can set up their demands in this suit and have the litigation determined in one proceeding and at no apparent increase in expenses or annoyance to them. As said by our Supreme Court in the case of Railway Co. v. Dowe, 701 Tex. 5, 7 S. W. 368:

"Our system of procedure is essentially equitable, * * * and was designed to prevent more than one suit growing out of the same subject-matter of litigation; and our decisions from the first have steadily fostered this policy."

While this statement of the Supreme Court was made in a case in which an injunction

was sought against the prosecution by one person of a number of suits against the plaintiff, all growing out of the same subject-matter of litigation, we quote it as showing the general tendency of our courts to exercise their equitable jurisdiction to prevent a multiplicity of suits. Brown on Jurisdiction, § 196, lays down the general rule as follows:

"As a fundamental principle, equity takes jurisdiction where it is made necessary to administer a preventive remedy, or when the courts of ordinary jurisdiction are made instruments of injustice, or when the right of action is given by law, but the remedy allowable by the court within its jurisdiction is inadequate to meet the demands of justice."

In the case of Supreme Lodge v. Ray, 166 S. W. 46, the Court of Appeals for the Sixth District held that the district court was authorized to issue an injunction restraining 39 defendants from prosecuting separate suits against the plaintiff, a fraternal benefit association, for recovery of assessments claimed by them to have been illegally made. The opinion in this case sustains our conclusion that, if the allegations of the petition in the instant case are true, appellants are entitled to the relief asked by them.

The Kentucky case of Railway Co. v. Baker, 155 Ky. 512, 159 S. W. 1169, 49 L. R. A. (N. S.) 496, was a suit by the railroad company for injunction to restrain 41 defendants from prosecuting separate suits in the quarterly court for damages for the alleged failure of the railroad company to furnish them transportation. Each of the suits was for $25 and was brought for that amount for the purpose of preventing an appeal. In passing on the questions presented in the case, the court, after stating the general rules under which the defendants had the right to institute separate suits in the quarterly court and have that court hear and determine their claims, says:

"There are, however, some well-founded exceptions to these general rules, and these exceptions have themselves the merit that under their application the plaintiffs will not be unreasonably delayed in the assertion of their rights, or denied the privilege of having their controversy heard and determined by a court of competent jurisdiction. The most usual exception arises when there are a multitude of suits pending by different parties against the same defendant, growing out of the same transaction, and the character of the asserted demands are such that the rights of the plaintiffs can be fully protected by having them all disposed of in one action, thus saving to the defendant the inconvenience, cost, and expense of defending numerous individual suits seeking to accomplish the same end. * * *

"We think there is a broad distinction between invoking the jurisdiction of a court of equity to prevent a multiplicity of suits by different plaintiffs each having a separate, distinct, meritorious cause of action, and invoking this jurisdiction to prevent a multiplicity of suits by plaintiffs who have not a legally enforceable demand against the defendant. And so, if these coal diggers have not a meritorious demand against the defendant railroad company, there are many reasons why the jurisdiction of a court of equity should be invoked to require all their suits to be heard and determined in one action, that could not be invoked if each of them had a meritorious claim. If no one of the plaintiffs in the quarterly court is entitled to recover any amount against the defendant company in any of these suits, it would be an extraordinary hardship on the defendant to put it to the expense, inconvenience, and cost of defending this multitude of suits in the quarterly court, and be an intolerable condition of affairs if, after defending them to the best of its ability, a binding and unreviewable judgment should be rendered against it in each case for the amount claimed, and it be compelled to pay the large sum that would be required to satisfy these various judgments without an opportunity to have its rights determined by a court speaking with more authority than the quarterly court.

"Having in mind the distinction that should be observed between the assertion of valid and groundless claims, we think that, when a large number of cases arising out of the same transaction or resting on the same common ground have been instituted by different plaintiffs against the same defendant, and none of the plaintiffs have a legally meritorious or enforceable demand against the defendant, the jurisdiction of a court of equity may be invoked to the end that the rights of the parties, plaintiffs and defendant, may be heard and determined in one proceeding, thereby saving the defendant from the unjust burden of defending a number of separate suits."

The case of Buckeye Garment Co. v. Hieatt, 177 Ky. 783, 198 S. W. 21, which was also decided by the Kentucky court, approves and follows the holding in the Baker Case, supra.

We think the trial court erred in sustaining the demurrer to the petition, and the judgment should be reversed and the cause remanded.

Reversed and remanded.