Kentucky Utilities Company v. Warren Ellison Cafe.

(Decided November 19. 1929.)

SQUIRE R. OGDEN, CARR & CARR and GORDON & LAURENT for appellant.

HESTER & STAHR for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Appellee recovered a judgment against appellant in the lower court for $500. It is alleged in the petition that Warren Ellison and W. S. Ellison were engaged in the business of conducting a confectionery in Hickman under the name of Warren Ellison Cafe; that Warren Ellison had been adjudged insane and that H. M. Ellison was his committee; that appellant had contracted with Ellison to furnish electric current to him and had installed in his place of business two meters for measuring the current; that the light meter and wiring connecting it with the frigidaire and other equipment became defective, and the electric energy was not properly measured, or was wasted and not used during the months of February and March, 1928; that the agent of appellant was notified of the defective condition of the light meter and wiring, and that he promised to remedy the defects, but failed to perform his promise; that he was several times requested to do this and that he promised that appellant would make no charge for leakage or wastage; that the electric energy that passed through the light meter for the month of February at the current rate charged amounted to $34, and for the month of March amounted to $41; that the amount for each of said months should have been only $12.50.

The basis of the action, as alleged in the petition, is that there was a defect in the light meter which the agent of appellant promised to remedy and agreed that the appellant would collect nothing of the amount indicated above the usual amount by reason of the defects. There seems to be no dispute that the cost of the current ordinarily was about $12.50 except for the months mentioned, and that after the defects were remedied by some one other than the agent of appellant the amount dropped to the usual sum of about $12.50. The appellee sent a check for what it conceived to be due for the months mentioned, but the company declined to accept the check. The disagreement between the appellant and appellee continued for some weeks, until finally appellant cut off the light current as well as the power current, and left appellee without any service. It sought its remedy first in the quarterly court by instituting suit for the damage alleged to have been occasioned it each day. This method of procedure was continued by it from May 24th to May 28th, when appellant sought and obtained an in-

junction against its prosecuting its actions for the damage occasioned from day to day. It then filed this suit, claiming that it had been damaged in the sum of $1,000 after May 28th by reason of the failure of the company to furnish it current with which to conduct its business.

A special demurrer was filed on the ground that another cause of action involving the same subject-matter was pending in the same court. It was overruled. A general demurrer was filed and overruled. An answer was filed alleging in one paragraph the same grounds as was the basis of the special demurrer. Another paragraph of the answer contained a plea in abatement and a counterclaim. In another paragraph it was pleaded in the answer that the appellant had adopted a reasonable rule in the city of Hickman whereby it would refuse to furnish electric current to customers who had not paid their bills on, or before, a certain day of the month following the month for which the service was rendered. It was alleged that Ellison had failed to pay in accordance with the rules, and that his service was therefore discontinued.

There is no doubt that there was a defect in the light meter, or in some of the wiring, which caused it to register an abnormal amount of current. It was testified to that the agent of appellant was notified and that he agreed to make repairs, and that he failed to do so. It was also testified to that he agreed that there would be no claim made by the company for the excess over the usual amount of current consumed. Whether these things were true or not was a question for the jury. There was a genuine dispute between appellant and appellee over the amount of the bill which should be paid. There was no willful or negligent failure on the part of appellee to pay the bill. It was not paid because the amount was in good faith disputed. On the 18th day of May appellant advised appellee that the electric billing for February and March had not been included in the check which it had remitted, and that the check could not be accepted as written. Appellee was advised that the auditor of appellant was insisting that the cut-off rules should be enforced, and that the service would be discontinued unless the account was paid in full. It did not pay in full and its current was discontinued, not only that passing through the light meter but the other meter as well. The bills had been paid for the service supplied through the other meter.

562

There is much learned argument in the brief filed in behalf of appellant on the point urged by it that the special demurrer should have been sustained because there was an equity suit brought to prevent the prosecution of certain small suits which had been instituted. It is urged that the same facts were involved. We cannot agree with the argument, although we find no fault with the cases of Brashears v. Frazier, 110 S. W. 826, 33 Ky. Law Rep. 662; Board of Education of Cumberland County v. Jones, 194 Ky. 603, 240 S. W. 65; Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S. W. 928; Illinois Cent. R. Co. v. Baker, 155 Ky. 512, 159 S. W. 1169, 49 L. R. A. (N. S.) 496; Buckeye Garment Co. v. Hieatt, 177 Ky. 783, 198 S. W. 21. These cases grew out of a different state of facts. The equity suit was to enjoin the institution of several suits causing annoyance and great costs. It is not thought that learned counsel for appellee desire to contend that a suit may be instituted to restrain a party from instituting a suit for the breach of a contract without peculiar circumstances which make it proper to invoke the aid of a court of equity. All that appellee did was to bring a suit for its entire damages after it had been enjoined from pestiferous practices. We are of the opinion that it was within its rights in seeking a recovery for all the damages occasioned to it by reason of the discontinuance of the service. It is suggested that the question to be determined in the equity suit was whether the appellant acted within its rights in discontinuing the service, and that the same question is involved in the suit for damages. It may be that in the suit for damages that is one of the main questions, but it is a different suit altogether. It is a suit for damages occasioned by the wrongful discontinuance of the service.

The next point urged against the judgment below is that no cause of action was stated in the petition and that none was proved at the trial. The allegations of the petition, fairly construed, show that the appellant discontinued the service without sufficient reason therefor after its agent had promised that there would be an adjustment of disputed items. It is the law in the case of a public service company that it may make and enforce a reasonable rule to refuse service if, after notice, a bill remains unpaid, but in such event it is liable in damages if the bill rendered is unjust or erroneous. If the bill rendered was just and correct and the consumer refused

to pay, the cut-off rule may have been invoked. It is not enough that the consumer may believe that the bill is erroneous, or that it is unjust or exorbitant. He may, in good faith, believe these things; but if he is mistaken in his belief and refuses to pay, he may not recover damages because the service is denied him. If a public service company discontinues its service to a consumer, it passes judgment on its own case. Therefore it must know that its rules have been violated after a correct bill has been submitted before it is justified in applying the cut-off rule. If it applies the rule without the right so to do and the customer is damaged thereby, the company is liable for damages naturally flowing from its act in discontinuing the service. These principles were restated in the case of Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S. W. 928. What more was there in this whole case than the question of whether a correct bill was submitted? The proof tends to show that the bill was incorrect, and that the agent of appellant, recognizing that fact, agreed to have it corrected. If the agent made such an agreement, recognizing that the bill was incorrect, appellant was without authority to invoke the cut-off rule, and if that be so, and damages resulted, caused directly by its wrongful act, it must be held responsible.

The only question for consideration by the jury was whether the agreement was made with the agent, and, if so made, the other question then arose as to the amount of damages sustained by appellee. The proof was sufficient to take the case to the jury on both of these points and the jury decided both of them adversely to the contention of appellant. It is true that lost profits are a proper element of damage only when such loss is the direct and necessary result of a defendant's acts, or in cases involving a breach of contract where the loss of profits may reasonably be supposed to have been within the contemplation of the parties when the contract was made as the probable result of its violation. It is always necessary, however, before there can be a recovery, to show profits with a reasonable degree of certainty. 18 R. C. L. 501.

In Union Cotton Co. v. Bondurant, 188 Ky. 319, 222 S. W. 66, the court held that the loss of anticipated proffis may be recovered when they can be legally ascertained, and when there is no lack of certainty on account of being too remote, conjectural, and speculative.

There is no disputing the correctness of that rule, but in this case appellee established its loss of profits to a reasonable degree of certainty. It did this by showing the effect that the discontinuance of the service had upon its business and the reduction of its income by reason of its being deprived of the current. It showed that its profits were cut very materially, and, according to the very nature of its business, it cannot be said that its claim in this respect was unreasonable.

Complaint is made about the instructions which the court gave and which he refused to give. The instructions are clear and fair to appellant. The first instruction assumes that the appellant had the right to discontinue the service, but denied it that right if, through its agent, it had promised to repair and remedy defects existing in the equipment of appellee located in its place of business. If this promise was made the appellant was without right to discontinue the service, and was responsible for the damages occasioned by its wrongful act. The instruction did not allow appellee to recover unless the jury believed from the evidence that such a contract, or agreement, was made and told the jury that appellant had the right to discontinue its supply of electrical current if such a contract, or agreement, was not made. The other two instructions relate to the counterclaim.

We perceive no good reason for reversing the judgment. The agent of appellant made a mistake which resulted unfortunately for all parties. It is true the appellee could have saved itself much trouble and loss if it had paid the bills as presented, but it cannot be held that it was without right to stand on the agreement with appellant's agent, if any such agreement was made, and the jury found that there was.

Judgment affirmed.