## Tackett v. Prestonsburg Water Company.

(Decided March 17, 1931.)

JOE P. TACKETT and F. M. BURKE for appellant.

A. J. MAY for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

In June, 1921, the city council of Prestonsburg sold and granted to C. G. Davis or to his assigns a franchise, authorizing him to install, maintain, and operate a system of waterworks for the purpose of supplying the city and its inhabitants with water for domestic and business purposes.

Pursuant to said franchise, Mr. Davis installed a system of waterworks in the city of Prestonsburg, but after the installation thereof, he died and left surviving a widow and one son, who continued to operate the plant and furnish water to the city and citizens until the 13th

day of February, 1929, when the franchise and the entire system of waterworks was sold to the Prestonsburg Water Company, a corporation hereinafter called the company.

During all the time the Davises owned and operated this water system the water was furnished at a flat rate of $2 per month where a bath had not been installed and $3 per month where a bath had been installed and was used. After the company acquired this system, it installed meters and adopted rules regulating the use of water by its customers, one of which rules relating to delinquents is as follows:

"Delinquents. Statements of the amount due the company for services will be rendered monthly. This statement will show the date on which amount due the Water Co. must be paid and if it is not paid on or before said date the consumer will be classed as delinquent and water will be cut off without further notice and will not be turned on until all monies due the Water Company have been paid in full plus the fees of $1.00 each for cutting off and turning on the water. If such delinquent consumer has no deposit with the Water Company they shall be required to make a deposit according to the size of their meter, before the water will be turned on."

The appellant, Joe P. Tackett, was a customer of the company, and a meter had been installed connecting the pipes running into his residence.

The company rendered to Mr. Tackett a bill for $9.50 for the month of January, for 12,000 gallons of water which the meter showed he had used. Mr. Tackett refused to pay the bill and the water was cut off from his residence.

On the 12th day of March, 1930, the company filed a suit in the circuit court of Floyd county against Joe P. Tackett and R. L. Spradlin, alleging in the petition its ownership and operation of the water plant under the franchise which it had purchased from the Davises; that it had adopted rules regulating the conduct of its business and it made these rules and the copy of the franchise granted to C. G. Davis a part of its petition and filed them as exhibits; it further alleged that Tackett was justly indebted to it in the sum of $9.50 for water furnished and delivered to him for which he had refused

to pay, and that on account of his nonpayment of the bill the company was compelled to and did on February 13, 1930, cut off and discontinue the supply of water to him.

In the second paragraph, it alleged that the defendant, Joe P. Tackett, had filed in the justice's court of his codefendant, R. L. Spradlin, who was a justice of the peace in Floyd county, ten or twelve suits for damages against it, in each of which he sought the recovery of the sum of $5; that these suits had been filed on successive days, and that said Tackett was threatening to and would file a suit of like character on each and every day until the company reconnected the lines and furnished water to him; that the object of Tackett in filing the suits was to harass and annoy the plaintiff and to involve it in large and unnecessary costs, in loss of time and expenditure of money; and it asked that the defendant be restrained from further prosecution of any of the suits pending and from the institution of other suits in connection with said controversy.

By way of amended petition, the company alleged that the questions involved in all the suits in the justice's court could and should be determined in one action; that the defendant Tackett for the purpose of preventing an appeal from the justice's court had sued for sums less than $10 in each case so that no appeal might be prosecuted from any judgment that might be rendered; that issues involved in each suit were identical and involved the same questions of law and fact; and asked that all the suits in the justice's court be transferred to the Floyd circuit court and consolidated with its suit.

In a separate answer and counterclaim, Joe P. Tackett traversed the allegations of the petition as amended, and affirmatively alleged that he was not indebted to the company in any sum in excess of $3 for water furnished and delivered to him for the thirty days covered by the account in controversy. He further alleged that the meter installed by the company was defective and would not accurately measure the proper number of gallons passing through it; that for a period from November 27, 1929, to January 23, 1930, it registered 14,200 gallons of water, and on December 31 the company presented a bill for $6.13. that upon complaint made by him, the company through its general manager advised him that a mistake had been made and that his bill should have been $2.15 instead of $6.13 and that he

paid the $2.15 in satisfaction of the bill; that the company submitted to him on January 31, 1930, a bill showing a consumption of 12,000 gallons from December 23, to January 22; that he did not use 12,000 gallons and there were no defects in his plumbing through which water could leak; he did not during said time consume water in excess of 2,500 gallons and the meter wrongfully registered 12,000 gallons; that in truth and in fact the bill should have been only for the minimum charge of $2 and that the attention of the company was called to the defective meter and it was repeatedly requested to adjust it or to exchange it for a correct meter; that on February 9, 1930, he went to the office of the company and there tendered to the collector $3 and offered to pay that sum for water consumed for the period covered by the bill in controversy, but that the company unlawfully refused to accept the same; that said sum of $3 was sufficient to more than pay the amount for the water consumed in the period.

By way of counterclaim, Mr. Tackett alleged that he had been damaged in the sum of $2,500 by reason of his supply of water having been wrongfully cut off; that by reason thereof, he, his wife, and six children had been deprived of the use of his bathroom and had been forced to procure their supply of water for personal and domestic purposes from the home of a neighbor and had been forced to use an old fashioned toilet some distance from his house and on the lot of a neighbor.

In addition to his prayer for damages, he asked for a mandatory injunction requiring the company to furnish him water.

By amended answer he alleged that the company under its franchise was entitled to charge a flat rate of $2 based on the consumption of not more than 2,000 gallons, but that on consumption in excess of 2,000 gallons it was not entitled to charge a rate in excess of 75 cents for each thousand gallons of water used; that the $2 flat rate charged in his bill for the first 2,000 gallons was excessive to the amount of 50 cents. By reply the company completed the issues.

The evidence took a wide range, and much of it was not pertinent to the real issues. Mr. Tackett assumed the burden of proof and introduced a number of witnesses. Mr. Tackett and Mr. Oscar Bond, a relative who was often in his home, testified that the plumbing

and fixtures were modern and up to date in every respect and that they never found any leaks or defects, except that for a time the rubber ball which cuts off the flow of water from the flush box after the commode had been flushed, failed to function properly but that that defect had been corrected. Their evidence, however, indicated that this defective condition did not exist for a time sufficient to materially increase the amount registered by the meter.

Mr. Tackett testified that an employee of the company made a test of the meter in his presence by drawing a measured quantity of water from faucets to determine whether the meter correctly registered the water drawn. He testified that his family did not use an unusual quantity of water during the period covered by the bill in controversy, and his evidence tended to indicate that the meter reading was incorrect and excessive. On a hypothetical question based on the inconveniences which Mr. Tackett testified that he and his family had suffered by reason of being deprived of the water, four witnesses who were customers of the company gave their opinion as to the amount of the damages he had suffered.

Mr. Mays, president and general manager of the company, testified that the meter installed was of a make that was accurate and had given general satisfaction; that the reading indicated 12,000 gallons of water had been consumed during the period covered by the bill. He testified that in the month of January, he with Dick Davis and D. Belcher, employees of the company, investigated Mr. Tackett's plumbing and found the flush box in the bathroom in such condition as to permit leakage and waste of large quantities of water. In this he was corroborated by Belcher and Davis. He testified that he made no proposition to deduct from Mr. Tackett's bill 25 cents per thousand gallons for the first 2,000 gallons charged in the bill.

Mr. Davis testified that he read Mr. Tackett's meter for the period in question and thought he had read it correctly, but further testified that he had read the meter for a previous period and thought the reading was correct, but on complaint, it was re-read and Mr. Tackett's bill corrected and materially reduced.

By agreement of parties, the law and facts were submitted to the court without the intervention of a jury.

The court made perpetual the temporary injunction which had been granted to the water company, restraining Joe P. Tackett and R. L. Spradlin from further prosecution of the suits pending in the justice's court and dismissing Tackett's counterclaim and directed that Mr. Tackett disconnect the water line leading from the home of F. M. Burke to his home and discontinue the use of water therefrom, and further adjudged that the water company adjust its account so as to provide a rate of 75 cents for each 1,000 gallons including the first 2,000 gallons furnished through the meter, or in other words that it deduct 50 cents from the amount charged against Mr. Tackett, and upon payment of said bill by Mr. Tackett, the Company resume water service to him.

The Prestonsburg Water Company is a public service corporation and has a right to make and enforce reasonable rules and regulations for the conduct of its business, and the rule providing that water may be cut off and service discontinued to a customer who fails and refuses to pay his bill is reasonable, Cox v. City of Cynthiana, 123 Ky. 363, 96 S. W. 456, 29 Ky. Law Rep. 780; Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S. W. 928; Kentucky Utilities Co. v. Warren Ellison Cafe, 231 Ky. 558, 21 S. W. (2d) 976, 978.

It is pointed out in the cases cited that there are limitations to the principles above stated and that a public service corporation may not deliberately or through error make out an incorrect or excessive bill and then, upon failure of the customer to pay it, cut off or discontinue the service without becoming liable for such damages as the customer may sustain by reason of being deprived of the service. On the other hand, a customer of a public service corporation is not entitled to a continued service when he fails or refuses to pay his bill.

In the case of Kentucky Utilities Co. v. Warren Ellison Cafe, supra, it is said:

"It is the law in the case of a public service company that it may make and enforce a reasonable rule to refuse service if, after notice, a bill remains unpaid, but in such event it is liable in damages if the bill rendered is unjust or erroneous. If the bill rendered was just and correct and the consumer refused to pay, the cut-off rule may have been invoked. It is not enough that the consumer may

believe that the bill is erroneous, or that it is unjust or exorbitant. He may, in all good faith, believe these things; but if he is mistaken in his belief and refuses to pay, he may not recover damages because the service is denied him. If a public service company discontinues its service to a consumer, it passes judgment on its own case. Therefore it must know that its rules have been violated after a correct bill has been submitted before it is justified in applying the cut-off rule. If it applies the rule without the right so to do and the customer is damaged thereby, the company is liable for damages naturally flowing from its act in discontinuing the service. These principles were restated in the case of Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S. W. 928.''

Mr. Tackett refused to pay his bill on the ground that he was charged with the use of an excessive quantity of water. It does appear that this was an unusual quantity to be used within a period of one month by Mr. Tackett's family, but he has been unable to show by any direct proof that the meter was incorrectly read, and there is a sharp conflict in the evidence as to whether there was a leakage or waste of water due to defective plumbing.

The judge who considered and weighed this conflicting evidence in the court below found against Mr. Tackett on this point, and so, under the general rule of giving due weight to the opinion of the judge in such circumstances, we are not inclined to disturb his finding in that particular.

It is insisted by appellant that aside from the question of the quantity of water for which he was charged, the bill presented was excessive, in that he was charged the flate rate of $2 for the first 2,000 gallone and 75 cents per thousand for the amount in excess thereof; in other words, that there was an excess charge of 50 cents on the bill as was held by the court below. This controversy did not arise over the right of the company to charge the flat rate of $2 where water was used in excess of 2,000 gallons, but the contention arose over the quantity of water charged for on the bill.

If Mr. Tackett had questioned the flat rate charge and had offered to pay for the quantity of water charged

620

on his bill at the rate of 75 cents per 1,000 gallons, he might now consistently be heard to urge that he is entitled to the relief he is seeking because of the imposition of the flat rate; but he raised that question for the first time in his amended answer and counterclaim, and even then did not offer to pay the bill with the alleged flat rate overcharge deducted. He only offered to pay $3 in full settlement of the bill of $9.50 and raised no question as to the flat rate charge.

The judge in the court below construed the franchise under which the company operates as authorizing a flat rate charge of $2 for 2,000 gallons or less, and a straight rate of 75 cents per thousand gallons where an excess of 2,000 gallons is furnished. Something might be said on both sides of that question, but inasmuch as this litigation is the outgrowth of a controversy over the quantity of water charged in the bill, and the flat rate charge merely incidental, we refrain from approving or disapproving the construction adopted by the lower court.

The lower court having found against appellant on the primary and moving cause of this controversy, evidently did not deem the 50-cent overcharge purged from the bill by his construction of the company's charter of sufficient moment to warrant consideration, and passing the question of construction of the charter, this court is inclined to adopt findings of the lower court in other respects.

Judgment affirmed.