## Camp Taylor Development Co. v. Wimberg.
(Decided Jan. 25, 1938.)

H. O. WILLIAMS for appellant.

LAWRENCE S. GRAUMAN and THOMAS BEALE for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellant is a water company serving the unincorporated community known as Camp Taylor near the city of Louisville in Jefferson county. The appellee, A. J. Wimberg, a customer of appellant, instituted an

action against it in the Jefferson circuit court to recover damages which he alleged resulted from the wrongful and unlawful act of the company in cutting off the water supply to his residence and refusing to furnish water to him from May 2, 1934, to May 29, 1934. The jury returned a verdict for the plaintiff for $1,000, and, from the judgment entered thereon, this appeal is prosecuted.

The water system operated by appellant was installed by the United States government in 1917 when it established a military cantonment in Jefferson county known as Camp Zachary Taylor. Numerous water lines were installed under the ground, and it appears that the water was conducted through wooden pipes. The property was divided into lots and sold by the government in 1921. In the deeds to purchasers, it was stipulated that the roads, sewer system, and water system were not to be interfered with by the purchasers, but were to be maintained for the use of all lot owners. Water lines did not follow the streets and alleys, but in many instances crossed the lots of the various property owners. The Camp Taylor Development Company took over the water system, and entered into contracts with the property owners to furnish water to them at stipulated rates. The water was purchased from the Louisville Water Company, and conducted through the lines which had been installed by the United States government. See Beutel v. Camp Taylor Development Company, 268 Ky. 544, 105 S. W. (2d) 632.

The appellee resided in a house on Morgan street, consisting of three bedrooms, living room, dining room, kitchen, and bathroom. In 1925 he entered into a contract with appellant under which he was furnished water for domestic purposes. The line leading to his residence passed under Morgan street, and tapped an 8-inch wooden main on the property of J. W. Argenbright. The appellee paid the minimum rate of $2 per month, and no controversy over the monthly bills arose until December, 1933. In October, 1933, the appellant undertook to repair the 8-inch wooden main which was leaking, but Argenbright refused to permit its employees to go upon his property. The company then ran a 2-inch galvanized iron pipe through the 8-inch wooden main under Argenbright's lot. As the water no longer

flowed through the wooden main, appellee's supply was cut off. Argenbright refused to permit the company to go on his property to connect appellee's service line with the 2-inch pipe, and the company thereupon installed a meter at the intersection of Franklin and Morgan streets and ran an iron pipe from that point into the Wimberg property. The appellee's bill for the month following the making of the new connection and the installation of the meter at Franklin and Morgan streets was higher than the minimum bill of $2 which he had been paying. He went to the office of the company, insisted that the bill was incorrect, and offered to pay $2 which the company refused to accept. The appellee failed to pay the bill by December 10, when it was due, and the appellant turned off the water at the intersection of Franklin and Morgan streets. It was discovered almost immediately that ———— Elam's supply of water was also cut off. Elam owned a lot near the Wimberg lot. It was apparent that water to the Elam residence had passed through the meter which had been installed for the purpose of measuring the water supplied to the Wimberg residence, and consequently the water was turned on, and the company accepted $2 from appellee in payment of the bill due December 1, 1933. Thereafter the company made another connection to the Elam residence and cut off the old connection. Appellee's monthly bills continued to exceed $2, the amount he formerly paid, and he continued to protest to the company and insisted that the bills were incorrect. On May 1, 1934, appellant sent to Wimberg a statement showing that a total of $14.88 was due for water service for the months of January, February, March, April, and May. While the evidence is not clear on the point, it appears that the minimum charge was $2.50 per month, with a discount of .50 cents if paid by the 10th day of the succeeding month. The statement showed that appellee had been charged $2.50 for each month except April, for which an additional charge of $2.38 was made for water used in excess of the amount permitted by the minimum rate. The appellee went to the company's office, and offered to pay $10. He insisted that the bill was incorrect, and that water was being delivered to other property owners through his meter. The company offered to accept $10 and make an investigation and determine

the correctness of the remainder of the bill later, but the appellee refused to pay the $10 unless he was given a receipt in full. On May 2 the appellant turned off his water. The Camp Taylor Development Company was in receivership at that time, and on May 26, at an informal conference with the judge before whom the receivership proceeding was pending, the attorneys for the receiver and the appellee stated their respective versions of the controversy, and the judge directed the receiver to accept $8 from appellee in full settlement of the bill due May 1, 1934, and stated that, if Argenbright would not give the receiver permission to go on his property to make a connection to the Wimberg property he would issue a rule against him. Wimberg paid $8 to the receiver and was given a receipt. It seems that the court issued an order in the receivership proceedings requiring Argenbright to permit the water company to go on his property to make the connection. The company did make the connection on May 29, 1934, and turned on the water. This action for damages was filed after the receivership proceeding had been dismisssed.

A number of grounds are relied upon for a reversal of the judgment, but, in view of our conclusion that it must be reversed because the verdict is excessive, only a few of them need be considered, and these briefly.

It is argued that the petition fails to state a cause of action because it does not allege that the agents and servants of the appellant turned off the water of appellee while acting within the scope of their authority. The petition alleged that, "on May 2, 1934, said Receiver, his agents and servants, wrongfully and unlawfully and without right or authority, did arbitrarily disconnect the water service of the defendant to the plaintiff herein, and refused to furnish plaintiff further service," and, further, "on account of the wrongful and unlawful acts of the defendant, the plaintiff and his family consisting of his wife and seven children, were deprived of water in their home for the period of time above mentioned, to-wit: twenty-seven days, and were made sick, greatly inconvenienced and annoyed, to their injury and damage in the sum of Two Thousand ($2,000.00) Dollars. That the acts of said Receiver, his agents and servants, in disconnecting plaintiff's supply of water

and refusing to furnish water to him, was undertaken and done in a highhanded and arbitrary manner and without any reason, excuse or right, to the great injury and damage of the plaintiff as aforesaid.''

Ordinarily, in an action against a master for the wrongful act of his servant, the petition must describe the wrongful act and charge that it was done by the servant while acting within the scope of his employment. Maxwell's Adm'x v. Louisville & Nashville Railroad Company, 243 Ky. 190, 47 S. W. (2d) 1023. In the present case it was alleged that the defendant, its servants and employees, committed the wrongful act. That is equivalent to an averment that the defendant, by its servants and employees, committed the act, and is sufficient. If the act was committed by the defendant through its servants, then necessarily they were acting within the scope of their authority.

Appellant claims that appellee's payment of $8 on May 26, 1934, and his acceptance of a receipt for that amount, was a compromise and settlement of all matters in controversy, including the claim for damages resulting from appellant's alleged wrongful act in cutting off the water. The question of damages was not discussed, and the receipt itself shows that it was intended merely to cover the amount due for water service up to May 1, 1934.

Appellant also complains because the trial court overruled its motion to require this case to be tried with the case of Mary Wimberg v. Camp Taylor Development Company, then pending in the Jefferson circuit court. Mary Wimberg is the wife of appellee, and it appears that she had instituted an action for damages against the appellant. Like the appellee, she sought damages for the annoyance and inconvenience caused by the discontinuance of the water service, but she also sought reimbursement for certain expenses incurred by her by reason of the alleged wrongful act of appellant. The trial of the two cases, separately or together, was a matter within the sound discretion of the trial court, and it cannot be said such discretion was abused. Farrar v. Hank, 205 Ky. 89, 265 S. W. 487.

The instructions are criticized because they stated it was the duty of the defendant to furnish a meter that

correctly measured the water consumed by the plaintiff. In instruction No. 1 the court told the jury that, if they believed "from the evidence that the meter, as furnished by the defendant, did not correctly measure the water consumed by the plaintiff, and that the bill or statement rendered by the defendant to the plaintiff was not correct; and that by refusal of the plaintiff to pay such amount the defendant Development Company turned off the water service to the plaintiff's residence," they should find for the plaintiff. It was not claimed on the trial that the meter did not correctly measure the water which flowed through the pipe. Appellee's claim was, and there was some evidence to sustain it, that the bill sent to him included water furnished to other property owners in the neighborhood whose service lines tapped the line leading to appellee's residence after the water had been measured at the intersection of Morgan and Franklin streets. The only thing in dispute was the correctness of the bill. We are not prepared to say that the instructions in the form given were calculated to mislead the jury and were prejudicially erroneous, but on another trial they should be confined to the one issue in dispute.

It is argued that it was the duty of appellee to minimize his damages by paying the disputed bill and suing to recover the overpayment, and that the court erred in refusing so to instruct the jury. A number of foreign cases are cited. Whatever may be the rule elsewhere, it is settled in this jurisdiction that a water company's right to cut off a consumer's water supply cannot be exercised so as to coerce him into paying a bill which is incorrect. Tackett v. Prestonburg Water Company, 238 Ky. 613, 38 S. W. (2d) 687; Kentucky Utilities Company v. Warren Ellison Cafe, 231 Ky. 558, 21 S. W. (2d) 976; Schoening v. Paducah Water Company, 230 Ky. 453, 19 S. W. (2d) 1073; Louisville Tobacco Warehouse Company v. Louisville Water Company, 162 Ky. 478, 172 S. W. 928.

It is finally insisted that the verdict is excessive, and we have no hesitancy in sustaining this contention. The appellee sustained no financial loss by reason of the company's act in cutting off his water supply. Under the pleadings and proof, he is entitled to recover only for the trouble, annoyance, and inconvenience caused

by the wrongful act. Appellee's wife and seven children resided with him. During the 27-day period he was without water service, he and his children carried water for cooking and other purposes from the home of a neighbor, a distance of about 300 feet. The jury allowed him damages in the sum of $1,000, or at the rate of nearly $40 a day. There is no proof that appellant acted maliciously or wantonly, and there is no ground for punitive damages. There is evidence that appellee refused to permit appellant's agents to go on his premises to make an investigation for the purpose of ascertaining whether or not other service lines tapped the water line leading to his residence. There is other evidence tending to show that he assumed an obstinate and stubborn attitude and refused to co-operate with appellant in an honest effort to settle the controversy. He denied this, but, be that as it may, the award is obviously so disproportionate to the damages sustained as to justify the conclusion that the verdict is not the result of cool and deliberate consideration by the jury.

The verdict is grossly excessive, and for that reason the judgment is reversed, with directions to grant appellant a new trial.