## Creson v. Carmody et al.

May 13, 1949.

Rehearing denied October 14, 1949.

William H. Natcher for appellant.

Maurice D. Burton for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellant, Arnold Creson, sold a dwelling house while it was under construction to the appellee, John

D. Carmody, for $15,000. The contract provided that Creson would complete the building "according to plan as quickly as possible." Though the structure at the time had not progressed beyond the framework, the contract specified only five items to be completed. There were no plans or specifications, the "plan" referred to in the contract being only a verbal description. It was further agreed that the building would be completed on or before August 15, 1946, when the deed would be delivered and $5,000 paid in cash, and that, if some "minor details" in finishing the building be incomplete, the purchaser could retain the value thereof until completed. The balance of the purchase price was payable in installments.

On September 16, 1946, the deed, made to Carmody and his wife, was delivered and they took possession. At that time $350 was deducted by agreement from the down payment in settlement of some complaints made by the purchasers. The deed made no mention of this but contained the provision that the purchasers through a real estate agency were retaining $440 until seven specified items should be completed.

This suit was brought by Carmody and wife against Creson in May, 1947, to recover $4,250 because of 'a number of serious defects and faults in the building which the defendant had refused to remedy. He denied that the building was defective and also relied upon estoppel which was, in effect, a plea of compromise and settlement. The defendant prayed recovery of the $440 which had been retained, claiming that all the work had been done properly. The case was tried in equity on the defendant's motion, and the court rendered judgment for the plaintiffs for $1,560 in addition to cancelling the right of the defendant to collect the $440 retained. This is in effect a judgment for $2,000 damages.

The plaintiffs proved a number of palpable and serious defects and faults in the building. Carmody placed $5,000 as the difference in value of the building as contemplated and as received. A contractor testified that in order to obtain a good workmanlike job it would be necessary to tear out the interior and reconstruct it, which he estimated would cost $4,300. Though the defendant testified that the building was properly constructed and there was nothing wrong with it, he intro-

duced an experienced builder who estimated that all defects could be corrected at a cost of $800. On this contradictory evidence we are accepting the decision of the circuit court as being that of a properly instructed jury.

On the issue of compromise of settlement the evidence is likewise conflicting. The plaintiff, Carmody, testified that the deduction of $350 was to cover the cost of linoleum and repairing bad plaster; that there was no intention of settling other claims because that which he now asserts is for defects and faults which have developed since he has been living in the house. On the contrary, the defendant's testimony is that at the time Carmody made complaint as to a number of minor matters, and the deduction was made in full settlement and satisfaction of all present and future claims.

We might reasonably rest the decision on this point upon the finding of the trial court upon the contradictory evidence, namely, that there was only a settlement for specific incomplete items and unsatisfactory plastering. This, in effect, is to find that the minds of the parties did not meet upon an understanding of payment and acceptance of the sum in full settlement of everything. If they did not, there was no compromise and settlement as to other defects. Davis v. Pendennis Club, 230 Ky. 465, 19 S. W. 2d 1078; Camp Taylor Development Co. v. Wimberg, 271 Ky. 635, 113 S. W. 2d 9. We may point again to the defendant's own proof that it would take $800 to correct existing faults. This is to say nothing of the plaintiff's proof evidencing the fact that the general bad condition of the building had developed later, consequently was not considered in the settlement. It was probably due to the use of green lumber. That was known to the builder, and we take it from the record that it was unknown to the buyer of the house. Ordinarily the absence of knowledge of a material fact by one of the parties alone does not afford a ground for the rescission of a compromise and settlement because the mistake was not mutual. The law is thus stated in 11 Am. Jur., Compromise and Settlement, sec. 32: "Ignorance of a fact by one party, even though had he known the fact he would not have entered into the compromise, is not generally ground for relief, unless it can be shown that the other party had superior means of ascertaining the facts and concealed the true state of affairs * * *." We think the defendant had superior means of ascer-

taining the fact and did not reveal the true state of affairs to the plaintiffs. His silence misled the other parties. 15 C. J. S., Compromise and Settlement, sec. 30. This constituted a species of fraud. So the plaintiffs are not concluded by the settlement from making claim for then undiscovered and later developed defects.

Wherefore, the judgment is affirmed.